840 P.2d 1238

**STATE of New Mexico, Plaintiff–Appellant/Cross–Appellee,**

v.

**Christine SWAVOLA, Defendant–Appellee/Cross–Appellant.**

No. 12990.

Court of Appeals of New Mexico.

Aug. 4, 1992.

Certiorari Denied Oct. 22, 1992.

474

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant/cross-appellee.

Nancy Hollander, Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg, P.A., Albuquerque, Carmen Garza, Las Cruces, for defendant-appellee/cross-appellant.

## OPINION

HARTZ, Judge.

On July 14, 1989, Defendant killed her husband, from whom she was separated, at her home. She was convicted of second degree murder with a firearm enhancement. She claimed self-defense and raised a battered-woman-syndrome defense. She appeals her conviction primarily on the ground of ineffective assistance of her trial counsel. She also argues that the district court erred in admitting certain evidence. She abandons other issues she listed in the docketing statement but did not argue in her Brief-in-Chief. *See State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.

App.1985). We affirm on Defendant's appeal. The State also filed an appeal from the decision of the district court but subsequently abandoned its appeal. *See id.*

## ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

■ The parties agree that Defendant is not entitled to a new trial on the basis of ineffective assistance unless trial counsel's representation fell below that of a reasonably competent attorney and that this prejudiced the defense. *See State v. Taylor,* 107 N.M. 66, 752 P.2d 781 (1988), *overruled on other grounds by Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 779 P.2d 99 (1989).

■ Recent decisions by this court have expressed our reservations about deciding claims of ineffective assistance of counsel in the absence of a district court evidentiary hearing on the matter. *See State v. Powers,* 111 N.M. 10, 800 P.2d 1067 (Ct. App.1990); *State v. Stenz,* 109 N.M. 536, 787 P.2d 455 (Ct.App.1990). We have also expressed concern that for us to remand a case to the district court for an evidentiary hearing on an ineffective-assistance claim may circumvent SCRA 1986, 5–802 (Repl.1992). *See Powers,* 111 N.M. at 12, 800 P.2d at 1069. We thus limit remand to those cases in which the record on appeal establishes a prima facie case of ineffective assistance. *See Stenz,* 109 N.M. at 539, 787 P.2d at 458. Such a prima facie case is not made when a plausible, rational strategy or tactic can explain the conduct of defense counsel. *See State v. Dean,* 105 N.M. 5, 727 P.2d 944 (Ct.App.1986). We placed this case on the general calendar because it appeared that there could be no rational basis for some of defense counsel's actions at trial. After full briefing and review of pertinent portions of the record, however, we now hold that Defendant has not established a prima facie case of ineffective assistance of counsel.

1. References to Religious Beliefs.

■ In his opening statement, the prosecutor mentioned the victim's "born again" Christian religious beliefs. Four prosecution witnesses referred to those same beliefs. Defendant claims on appeal that such evidence is not admissible to bolster the victim's credibility in making out-of-court declarations. She also states that the evidence is not appropriate proof of a peaceful character or that the victim acted in conformity with his beliefs. She points out the district court's willingness to sustain a late objection to this evidence as an indication that trial counsel was ineffective in failing to object earlier. We can agree with Defendant's contentions regarding the inadmissibility of evidence of the victim's religious beliefs for the above-stated purposes, however, without necessarily concluding that trial counsel erred in not objecting to its admission. After all, acquiescence to the introduction of inadmissible evidence may sometimes be tactically advantageous. *See State v. Crislip,* 110 N.M. 412, 417, 796 P.2d 1108, 1113 (Ct.App. 1990).

Defense counsel at trial made a strategic decision to present a defense based on the battered woman syndrome. Defendant on appeal does not challenge the rationality of that decision. Yet it is apparent from the testimony of the two trial experts on the syndrome that a professional conclusion as to whether Defendant suffered from the syndrome required a profound examination into the lives of both Defendant and her victim—an examination that encompassed matters that would otherwise ordinarily be improper subjects of inquiry in a criminal trial. The defense expert on the syndrome, Dr. Lenore Walker, found substantial support for her conclusions in the religious beliefs of the victim, going so far as to say at one point, "[T]he religious values covered up the abuse and were used as an excuse for using violence." Even if the prosecutor had improper purposes in offering evidence of the victim's religious beliefs, it would be far from irrational for defense counsel to agree to let the evidence in for the defense's own very substantial purposes. We will not second-guess trial counsel on this point. *See Dean,* 105 N.M. at 8, 727 P.2d at 947.

**2. Transcript of the Victim's Surreptitious Tape Recordings.**

The victim secretly recorded a conversation with Defendant on June 16, 1989. Defendant portrays trial counsel's handling of the transcript of the recording as that of an attorney without a plan. Defendant notes that trial counsel had successfully excluded the transcript, only to open the door for the prosecution's use of the transcript and her trial counsel's ultimate introduction of it into evidence. This, she states, is such inconsistent strategy that it must be ineffective assistance.

■ Nevertheless, we would be reluctant to hold that any shift in strategy must be ineffective assistance. Rigid allegiance to one strategy may actually be less effective assistance. A decision to offer previously excluded evidence could be the result of (1) noting the jury's reaction to the evidence already admitted, (2) reevaluation of the evidence in light of the admission of unexpected evidence or an interview with a witness who can establish that the previously excluded evidence can be useful, or (3) simply rethinking one's case. We agree that the jury could draw inferences adverse to Defendant from the transcript. On the other hand, Dr. Walker explained the conduct revealed by the transcript as being consistent with her diagnosis of battered woman syndrome. Moreover, the transcript suggests that the victim admitted prior beatings of Defendant. In this circumstance it would be rational defense strategy to offer the transcript into evidence.

**3. References to Defendant as an Actress, etc.**

The prosecutor stated in opening, "The evidence in this case is going to show that the woman on trial before you today is an actress. She's a fraud, a performer." On appeal Defendant contends that her trial counsel was ineffective in not objecting to this statement because the statement was an expression of personal opinion, was argumentative, and was based on evidence that should not have been admitted at trial. We disagree.

■ The statement was clearly intended to express a conclusion based on the forthcoming evidence. That is not an improper expression of opinion by counsel. *See State v. Ferguson*, 111 N.M. 191, 194, 803 P.2d 676, 679 (Ct.App.1990). The prosecutor's colorful choice of words may make the statement improperly argumentative, but we would defer to a trial judge on whether to permit the comment. Competent defense counsel could rationally decide that an objection complaining about the language could antagonize the jury more than it would assist Defendant.

■ As for the claim that no admissible evidence would support the prosecutor's statement, it would be a rational tactic for defense counsel at trial not to object to an unfounded statement because of the prospect that the jury will devalue the prosecutor's credibility when no supporting evidence is presented at trial. We should also note that the supporting evidence specifically mentioned by Defendant's Brief-in-Chief as being inadmissible was, as explained below, probably admissible as relevant to the battered-woman-syndrome issue.

**4. Evidence of Prior Bad Acts.**

Defendant argues that her trial counsel should have objected to evidence of several prior bad acts. She claims that the evidence was inappropriate character evidence because the State sought merely to prove that she acted in conformity with past behavior. We disagree. We consider the items of evidence individually.

■ Testimony by Kevin Fannin that Defendant had slapped the victim a week before his death rebutted the contention that Defendant suffered from "learned helplessness," a component of battered woman syndrome. Defendant's expert suggested that the syndrome could not be diagnosed un-

less it was present for more than a month. There would be no purpose in trial counsel's objecting to the evidence being admitted in the State's case-in-chief if it could later be admitted (perhaps with greater impact) on rebuttal.

Also permissible as rebuttal of the battered-woman-syndrome defense was Bob Peterson's testimony that when he stuck his finger into Defendant's chest she acted hurt and dramatic and said, "I don't need this." The State's expert, Dr. Ned Siegel, found the incident significant as inconsistent with the conduct of one suffering from battered woman syndrome.

■ Defendant does not complain on appeal of the admission of testimony by Lorraine Cano concerning an incident in which the victim used physical force on Defendant (this use of force could support Defendant's battered-woman-syndrome defense) but does complain that trial counsel did not object to the portion of the testimony characterizing Defendant as drunk and hysterical. That testimony was probably admissible simply to provide the circumstances surrounding the incident, but in any case it was consistent with Dr. Walker's testimony that Defendant would, as part of her syndrome, try to get attention by acting in a very dramatic or frantic way. It was not beneath the standard of reasonable competence for defense counsel to refrain from objecting to the testimony.

■ Connie Jesson's testimony that Defendant's character for truthfulness was not good was admissible because of the later introduction by the Defendant of out-of-court statements by Defendant to Dr. Walker. Dr. Walker even expressed an opinion that Defendant was truthful. A hearsay declarant can be impeached just as any other witness, SCRA 1986, 11–806; and a witness can be impeached by opinion evidence of the witness's character for untruthfulness. SCRA 1986, 11–608(A). Defense counsel could rationally decide that no purpose would be served by objecting to evidence that could be admitted later. As for Connie Jesson's testimony that Defendant was a violent and hysterical person, the district court sustained trial counsel's objection to the testimony, so it is irrelevant how well the objection was phrased.

■ The most troubling of the items of evidence is the testimony by Connie Jesson that during Defendant's previous marriage Defendant had alleged that her husband was abusive and then pounded her own chest in an airport bathroom. We do not view this testimony as evidence to prove Defendant's character, which would be barred by SCRA 1986, 11–404(B). The trait at issue—injuring oneself in order to support a claim of beating by one's spouse—is not a sufficiently general propensity to fit the "character" rubric. *See* Paul F. Rothstein, *Evidence in a Nutshell: State and Federal Rules* 355–57 (2d ed. 1981). Rather, the testimony was evidence of a modus operandi, a rather peculiar course of conduct, that is probative of a similar course of conduct at a later time. The event described by Connie Jesson was sufficiently remote in time that ordinarily the district court would probably sustain an objection to its admission. But in this case the battered-woman-syndrome defense opened up Defendant's entire relevant life experience. Dr. Walker explored Defendant's relationship with her former husband. Dr. Siegel sought to obtain a complete personal history to see how Defendant had lived her life. The evidence presented little risk of improper prejudice. In this context competent defense counsel could properly decide that an objection to the testimony might well fail and therefore decide to remain silent. Competent counsel do not necessarily make every objection that has substantial merit. *See* James W. McElhaney, *The Art of Objecting*, A.B.A. Journal, August 1992, at 79.

In sum, trial counsel's failure to object to the testimony about which Defendant now complains does not establish ineffective assistance of counsel.

5. Suppression of Statements Made After the Shooting.

Defendant's Brief-in-Chief describes how she was suffering severe emotional and

physical trauma when she made a statement to an officer who first arrived at the scene of the shooting. She also points to two later conflicting statements that she made while still emotionally upset. She provides three reasons why trial counsel's failures to object to the admission of this evidence amounted to ineffective assistance. First, the prosecution has the burden of proving voluntariness. Trial counsel's failure to file a motion to suppress forfeited her right to have the State prove voluntariness. Second, because the transcript of one statement showed the tape recording to be inaudible in a number of places and because the State later lost the tape, trial counsel should have moved to suppress the transcript of the recording. Third, part of the testimony from the officer at the scene was that Defendant at one point refused to answer further questions. Defendant argues that trial counsel should have objected because this was a comment on the exercise of her right to remain silent.

■ Defendant ignores, however, that her statements had some value to the defense. The statements reflected grief and remorse and her belief that she "had no choice." At the same time, any damage from the inconsistency of the statements was countered by Dr. Walker's testimony that a battered woman "may mix up a number of other things that have happened to her," thereby providing a "scientific" explanation for Defendant's inconsistencies.

■ There is also a plausible explanation for trial counsel's failure to object to testimony that Defendant exercised her right to remain silent. The arresting officer testified that Defendant gave a brief statement at the time of her arrest at her home. When asked, "[W]hat did you do at that point?" the officer responded that Defendant "didn't answer after that." Defense counsel may have felt that the unresponsive answer was insufficiently prejudicial to merit an objection, since the emo-

tions of the moment could explain Defendant's silence, and an instruction to the jury could simply emphasize a prejudicial spin to her silence.

Thus, once again trial counsel's actions can be explained as rational strategy.

6. Hearsay Evidence from the Victim.

■ Defendant complains of testimony that on the day of his death, the victim had expressed a desire to reconcile his difficulties with Defendant. Although Defendant initially contended that trial counsel was ineffective for not objecting to this testimony, she now concedes that trial counsel did object. She further argues, however, that the district court erred in admitting the testimony over objection. We disagree. The victim's statement was not excludable as hearsay because it described his then existing state of mind. See SCRA 1986, 11–803(C). The victim's state of mind was relevant to Defendant's claim of self-defense because his desire for reconciliation reduced the likelihood that he was the first aggressor. Cf. United States v. Brown, 490 F.2d 758, 767 (D.C.Cir.1973) (claim of self-defense can be rebutted by victim's expressions of fear of defendant, because such fear renders it unlikely that victim was first aggressor); SCRA 1986, 14–5191 (jury instruction stating that self defense ordinarily is not a defense available to the first aggressor).

7. Fundamental Error.

■ Defendant claims fundamental error from the cumulative effect of her trial counsel's errors. See State v. Diaz, 100 N.M. 210, 668 P.2d 326 (Ct.App.1983). Because we find no ineffective assistance on the record before us, there is no fundamental error requiring reversal. See State v. Larson, 107 N.M. 85, 86, 752 P.2d 1101, 1102 (Ct.App.1988).

ALLEGED TRIAL COURT ERROR

1. Evidence of Victim's Character For Peacefulness.

■ Defendant claims that the district court erroneously admitted testimony of

the victim's love for animals and the absence of any history of violence. This evidence was admissible, however, on the issue of battered woman syndrome. Dr. Walker's testimony made clear that the victim's history of violence toward Defendant, children, animals, and others was relevant to her analysis. The State could properly present evidence in anticipation of Dr. Walker's testimony. In any event, any error in admitting the evidence prematurely was harmless.

**2. Evidence of Prior Bad Act.**

■ Defendant claims that the trial court erroneously admitted evidence of an incident that occurred two weeks before the shooting. The incident was used by the State to show that Defendant had manufactured or exaggerated harm to her from the victim. She states that the evidence was probative only of a propensity to act in conformity with the prior behavior and was thus inadmissible. *See* R. 11–404(A). In our view, however, the evidence was admissible to prove a continuing plan to falsely paint the victim as a wife beater. *See* R. 11–404(B). Although it sometimes is difficult to draw the line between (1) inadmissible evidence of character to prove propensity and (2) admissible evidence of common plan, scheme, identity, motive, etc., *see Evidence in a Nutshell, supra,* at 360–63, the evidence here falls in the second category.

Defendant argues that the evidence was barred by our holding in *State v. Reneau,* 111 N.M. 217, 804 P.2d 408 (Ct.App.1990). We agree with *Reneau* that raising a claim of self-defense does not necessarily put a defendant's character in issue and that a defendant's prior act of violence toward a third person does not establish that the defendant had no fear of the victim. Here, however, the State is not relying on theories of admissibility rejected in *Reneau. Reneau* is therefore distinguishable.

**3. Cumulative Error.**

We have found no trial court error. There is thus no cumulative error. *See Larson,* 107 N.M. at 86, 752 P.2d at 1102.

*CONCLUSION*

We affirm the judgment and sentence. IT IS SO ORDERED.

DONNELLY and BIVINS, JJ., concur.