2005-NMCA-113

118 P.3d 762

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**David JENSEN, Defendant–Appellant.**

**No. 24,526.**

Court of Appeals of New Mexico.

June 23, 2005.

Certiorari Granted, No. 29,343,
Aug. 6, 2005.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Jennifer Byrns, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} In November 2002, Defendant David Jensen grabbed his wife (Wife) by the arms, sat her on a bed, ignored her telling him "no" and to stop, and, overcoming her physical resistance, while kneeling on her arms Defendant took off Wife's jeans and underwear, took off his own pants, and proceeded to force Wife to have sex with him. In August 2003, Defendant was tried on charges of criminal sexual penetration (CSP) under NMSA 1978, § 30–9–11(D)(3) (2003), and assault with intent to commit CSP on a household member (assault) under NMSA 1978, § 30–3–14(A) (1995). In addition to the element of causing Wife to engage in sexual intercourse, the jury instruction given for CSP contained the elements of physical force or physical violence resulting in abrasions of the labia minora. The jury instruction given for assault with intent to commit CSP contained the elements, among others, that Defendant "threw, pushed and/or restrained [Wife] on the bed," and that this conduct caused Wife to believe Defendant "was about to intrude on [her] bodily integrity or personal safety by touching or applying force to [her] in a rude, insolent or angry manner." Defendant did not testify, but argued the sex was consensual and that he did not force Wife in any way. On appeal, Defendant raises issues of (1) double jeopardy and (2) ineffective assistance of counsel. We affirm.

## DISCUSSION

### Double Jeopardy

{2} Defendant contends that the assault charge is a lesser included offense of the CSP charge and that his conviction of both violated double jeopardy. More particularly, he argues that his alleged actions were unitary, having occurred in a single, continuous chain of events for the sole purpose of perpetrating CSP, and that the Legislature did not intend multiple punishments. See Swafford v. State, 112 N.M. 3, 7–15, 810 P.2d 1223, 1227–35 (1991) (setting out the analyses for a court considering a claim of double jeopardy based on multiple punishments). For his multiple punishments argument, Defendant compares the elements of assault and CSP. See id. at 14–15, 810 P.2d at 1234–35 (discussing the elements test). Defendant acknowledges that each statute contains an element the other does not, i.e., that the assault charge contained the element that the victim be a household member, and the CSP charge contained the element of personal injury to the victim. Defendant nevertheless argues that the presumption, based on this elements showing, that the statutes punish distinct offenses, is rebutted based on a review of other indicia of legislative intent. See id. at 14, 810 P.2d at 1234 (stating that the presumption that the statutes punish distinct offenses "may be overcome by other indicia of legislative intent").

{3} In support of his argument, Defendant states that Section 30–3–14(A) (assault with intent to commit CSP against a household member) is identical to NMSA 1978, § 30–3–3 (1977) (assault with intent to commit CSP) in elements, except for the additional element in Section 30–3–14 that the victim be a household member. Defendant also states that other household member statutes, NMSA 1978, § 30–3–12 (1995) (assault against a household member), and NMSA 1978, § 30–3–13 (1995) (aggravated assault against a household member), mirror the general assault statutes, except for their requirement that the victim be a household member. Continuing, Defendant contends that assault against a household member with intent to commit CSP in Section 30–3–14, and assault with intent to commit CSP in

Section 30–3–3 are both third degree felonies, and, therefore, the Legislature did not intend to punish an assault more severely because the victim was a wife rather than a stranger. According to Defendant, "[h]ad the legislature believed that assaults against a spouse should be punished more severely than assaults against a non-spouse, then it would have enacted harsher penalties for assault against a household member."

{4} Further, Defendant asserts that the household member statutes were enacted merely to better track domestic violence prosecutions for federal funding purposes, and not because the Legislature believed that one assault was more blameworthy than the other. Defendant argues that if his alleged victim had been a stranger, he could not have been convicted of both charges as he was, because the assault charge would have been subsumed within the CSP charge for double jeopardy purposes, and it was only the added element of household member status under Section 30–3–14(A) by which it can be argued that the assault charge was not thus subsumed. See Swafford, 112 N.M. at 14, 810 P.2d at 1234 (stating that "[i]f [the elements] test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes").

{5} Combining all of his arguments indicated here, Defendant argues that "[i]t is not logical to assume that the legislature intended to punish this conduct twice merely because the alleged victim was [his] wife when the legislature does not generally punish more harshly assaults committed against spouses than it does those committed against non-spouses." The essence of Defendant's argument is that the assault with intent to commit CSP on a household member charge should be seen and treated no differently than an assault with intent to commit CSP charge, and because the latter (assault with intent to commit CSP charge) is subsumed under the CSP charge, the Legislature did not intend multiple punishments.

{6} We assume for the purpose of our analysis that the conduct was unitary. We reject Defendant's multiple punishment argument. We hold that the Legislature intend-

ed the CSP and assault with intent to commit CSP on a household member statutes to create separately punishable offenses. We first apply the strict elements test to determine legislative intent. See id. at 14–15, 810 P.2d at 1234–35; State v. Pisio, 119 N.M. 252, 261, 889 P.2d 860, 869 (Ct.App.1994). As Defendant acknowledges, the two offenses contain separate elements. We therefore look to the "other indicia" Defendant advances to rebut the presumption that the Legislature intended multiple punishments. Swafford, 112 N.M. at 14, 810 P.2d at 1234; Pisio, 119 N.M. at 261, 889 P.2d at 869. We are unpersuaded by Defendant's webbed argument pulling in, comparing, and contrasting an array of statutes.

{7} Sections 30–3–12 through –14 are clearly aimed at crimes against a household member. Section 30–3–14 focuses on CSP against a household member. We perceive the intent of the Legislature in enacting the criminal statutes that relate specifically to household member crimes to be to address a specific and distinct social concern apart from the general social harm that the same crimes against persons not household members are intended to address. The perpetration of an assault against a household member to commit CSP represents the Legislature's attempt to address a very specific scourge, violence against members of the household, that can reasonably be considered a distinct and separate harm. Defendant has provided no authority that places this perception of legislative intent in question. We are not prepared to say that the Legislature had only a statistical purpose for separately proscribing and punishing an assault with intent to commit CSP when the victim is a household member.

{8} Furthermore, we see only mild differences between this case and Swafford. In Swafford, our Supreme Court examined two separate statutes, CSP and incest, and determined that the two crimes had differences and were distinct. 112 N.M. at 15, 810 P.2d at 1235. The Court thought it significant that incest required proof of a certain degree of consanguinity, whereas under CSP, the relationship between the defendant and the victim was immaterial. Id. Further, the

Court determined that the statutes had different policy objectives. *Id.* The CSP sanction was "to prevent forcible, nonconsensual sexual activity and to protect a person's important interests in uncoerced choice of sexual partners." *Id.* Incest, on the other hand, was "more narrowly directed toward prohibiting sexual relations, whether consensual or not, between relatives." *Id.* This *Swafford* analysis applies in the present case. It is reasonable to conclude that the Legislature narrowly tailored Section 30–3–14(A) toward prohibiting violent conduct between domestic partners and other household members.

{9} Moreover, assault with intent to commit a felony is proscribed because it "put[s] persons in fear"; whereas actual penetration "actually injure[s] persons." *Cf. State v. Cowden,* 1996–NMCA–051, ¶ 12, 121 N.M. 703, 917 P.2d 972 (contrasting the social evils relating to harm from assault and harm from battery). While in the present case the assault was with an intent to commit CSP, followed then by CSP, the fear, and the acts of penetration with resulting personal injury, are reasonably separable in terms of harm and social evil, and are sufficient to reflect a legislative intent to punish the conduct separately. Finally, as the Supreme Court recently pointed out, when "the quantum of punishment is the same for both statutes, [it] suggests [that] the Legislature did not intend one offense to subsume the other, but intended separate punishment for each." *State v. Franco,* 2005–NMSC–013 ¶ 18, 137 N.M. 447, 112 P.3d 1104.

{10} For the foregoing reasons, we hold that Defendant was not placed in double jeopardy.

### Ineffective Assistance of Counsel

{11} Defendant asserts that his counsel was ineffective because his counsel: (1) failed to tender an instruction on third degree CSP which, Defendant argues, is a lesser included offense of second degree CSP of which he was convicted; (2) failed to tender an instruction setting out an affirmative defense of consent; and (3) did not have sufficient time to investigate and prepare the defense for trial.

### a. Instruction on Lesser Included Offense

■ {12} Defendant contends that third degree CSP, under Section 30–9–11(E) (CSP by use of force or coercion), is a lesser included offense of second degree CSP, under Section 30–9–11(D)(3) (requiring CSP by use of physical force or coercion resulting in personal injury), because one cannot commit the greater offense without also committing the lesser. Defendant also asserts that "there was a reasonable view of the evidence that third degree CSP was the highest level of offense committed." He therefore asserts that his counsel was ineffective in not tendering an instruction on third degree CSP as a lesser included offense. Defendant relies on *State v. Boeglin,* 105 N.M. 247, 249, 731 P.2d 943, 945 (1987), in which, after determining that the defendant affirmatively and on the record chose not to submit a lesser included offense instruction, and upon holding that the defendant waived his right to have the instruction submitted to the jury, our Supreme Court noted that "the defendant, not defense counsel, ultimately must decide whether to seek submission of lesser included offenses to the jury." Based on *Boeglin,* Defendant states that, in the present case, there is no indication he affirmatively waived his right to have the instruction submitted to the jury, and that counsel's failure to inform him of that right denied him the right to effective assistance of counsel. Finally, he asserts that the failure was prejudicial, since conviction on the lesser offense would have resulted in a lower sentence.

■ {13} We are unpersuaded. Defendant must show both that his counsel's performance fell below an objective standard of reasonableness and that his case was accordingly prejudiced. *Lytle v. Jordan,* 2001–NMSC–016, ¶¶ 25–26, 130 N.M. 198, 22 P.3d 666. The record does not provide a factual basis to find error. There exists no indication that Defendant's counsel acted in derogation of his client's wishes or right to have a lesser included offense instruction submitted to the jury. Further, we are not inclined to consider either a remand for a new trial or for an evidentiary hearing where it is conceivable that counsel might elect as a matter

of strategy not to request a lesser included instruction. *Cf. State v. Baca,* 1997–NMSC–059, ¶¶ 27–30, 124 N.M. 333, 950 P.2d 776 (recognizing that, as a tactical matter, arguing a lesser included offense could dilute the defense under the "all-or-nothing tactic").

{14} Rarely will we engage on appeal in Monday-morning quarterbacking of trial counsel's tactics and strategy, and remand for a hearing on the issue of ineffective assistance of counsel, even when it appears the decisions may have been improvident. *See State v. Orona,* 97 N.M. 232, 234, 638 P.2d 1077, 1079 (1982) ("Bad tactics and improvident strategy do not necessarily amount to ineffective assistance of counsel."); *State v. Gonzales,* 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992) (stating that the appellate courts will not second-guess the trial strategy and tactics of defense counsel). This is particularly true where, as here, Defendant offers no persuasive argument that eliminates any conceivable and viable strategy or tactic, that shows his attorney fell below that of a reasonably competent attorney, or that shows prejudice. *See State v. Richardson,* 114 N.M. 725, 727, 845 P.2d 819, 821 (Ct.App. 1992) (indicating that to establish a prima facie case of ineffective assistance of counsel, a defendant has the burden to show that counsel's performance fell below that of a reasonably competent defense attorney and that he was prejudiced by the incompetence).

{15} Moreover, we do not think that the lack of the lesser included offense instruction that Defendant claims he should have had rises to the level of prejudice or unjust result required for reversal. *Cf. State v. Newman,* 109 N.M. 263, 268, 784 P.2d 1006, 1011 (Ct. App.1989) ("In order to establish a claim of ineffective assistance of counsel, defendant's trial [counsel] must be shown to have been unreliable and as a result, the fact finder must have reached an unjust result.").

{16} Thus, we do not see that Defendant's contentions establish a prima facie case of ineffective assistance of counsel. *See State v. Swavola,* 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct.App.1992) (limiting remand in ineffective assistance cases to those "in which the record on appeal establishes a prima facie case of ineffective assistance"); *see also State*

*v. Herrera,* 2001–NMCA–073, ¶ 36, 131 N.M. 22, 33 P.3d 22 (setting out the factors for a prima facie case of ineffective assistance). Therefore, Defendant must pursue the issue, if at all, in a collateral proceeding. *See State v. Telles,* 1999–NMCA–013, ¶ 25, 126 N.M. 593, 973 P.2d 845; *State v. Martinez,* 1996–NMCA–109, ¶ 25, 122 N.M. 476, 927 P.2d 31 (stating that "[t]his Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel"); *see also Baca,* 1997–NMSC–059, ¶ 25, 124 N.M. 333, 950 P.2d 776 ("A record on appeal that provides a basis for remanding to the trial court for an evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such claims are heard on petition for writ of habeas corpus[.]").

### b.  Instruction on Consent

{17} Defendant states that the theory of his defense was that "the sexual encounter was consensual." Defendant contends that he was entitled to an instruction that explicitly told the jury that if it found credible evidence to support his theory of a consensual encounter, the burden shifted to the State to refute the claim. Defendant further states that "[t]he jury was not instructed that if the State could not refute consent beyond a reasonable doubt, it was required to find [Defendant] not guilty."

{18} It is important to remember that we are not determining in this case whether Defendant was entitled to an instruction on consent. Instead, we must determine whether counsel's performance fell below an objective standard of reasonableness and whether Defendant's case was prejudiced thereby. The type of prejudice required to establish a prima facie case of ineffective assistance of counsel is that there exists a reasonable probability that without counsel's errors, the result of the trial would have been different such that confidence in the outcome of the trial is undermined. *See Lytle,* 2001–NMSC–016, ¶ 27, 130 N.M. 198, 22 P.3d 666. Based on the following factors, we cannot say this standard has been met.

{19} First, our cases have long held that absence of consent is not an element of the crime of CSP. *See State v. Gillette*, 102 N.M. 695, 700, 699 P.2d 626, 631 (Ct.App.1985) (holding that "the defense of consent is not available to defendant because lack of consent is not an element of [CSP] )"; *State v. Jimenez*, 89 N.M. 652, 655, 556 P.2d 60, 63 (Ct.App.1976) (recognizing that absence of consent by the victim is not an element in the CSP statute and therefore holding that the district court did not err in refusing to instruct the jury that the State must prove that sexual intercourse was without the victim's consent in order to convict the defendant of CSP); *see also* NMSA 1978, § 30–9–10(A) (2001) ("Physical or verbal resistance of the victim is not an element of force or coercion[.]").

{20} Furthermore, the jury in the present case was instructed that the State must prove beyond a reasonable doubt that Defendant caused Wife to engage in sexual intercourse and used physical force or physical violence against Wife. Our cases have held that this instruction adequately addressed the question of consent, in that to prove that a defendant caused the victim to engage in sexual intercourse and used force is to negate a consensual encounter. *See State v. Crain*, 1997–NMCA–101, ¶ 12, 124 N.M. 84, 946 P.2d 1095 (holding that the instructions on the essential elements of CSP given to the jury "adequately covered the concept of lack of consent," and the defendant "reinforced this concept in his closing argument by asserting that the State had the burden of proving that the intercourse was not consensual"). Upon this state of the law, we cannot say that it was below the standard of professional competence to fail to request a separate instruction on lack of consent.

{21} Defendant nonetheless contends that he is entitled to assert consent as an affirmative defense, in the same manner that he would be able to assert defenses of insanity or self-defense. *See* UJI 14–5101 NMRA (insanity); UJI 14–5171 NMRA (justifiable homicide; self-defense). In support of his affirmative defense of consent, Defendant relies on *State v. Osborne*, 111 N.M. 654, 660, 808 P.2d 624, 630 (1991) (indicating that

even when a defense does not deny the existence of an element of the crime, it does not preclude the establishment of an excuse or justification under traditional affirmative defenses), and *State v. Parish*, 118 N.M. 39, 43, 878 P.2d 988, 992 (1994) (indicating that excuse or justification ought to be decided by the factfinder when the evidence permits). Although not raised by Defendant, we recognize that effective for cases filed after January 20, 2005, the Supreme Court has approved instructions for the defense of consent in CSP cases that are analogous to the defense of self-defense. *See, e.g.,* UJI 14–132 (Feb.2005 Supp.) (defining unlawfulness as without consent and one of three other elements); UJI 14–946 (Feb.2005 Supp.) (indicating that the element of unlawfulness should be inserted into the elements instruction for an offense of which a defendant is convicted "if the evidence raises a genuine issue of unlawfulness"); Order reprinted at p. 237 of Feb. 2005 Supp. (indicating effective date of new instructions).

{22} Defendant's position does not assist him in this case. Defendant's trial was well before the effective date of these recently approved instructions. Moreover, because we are quite uncertain about the scope of these instructions and when a genuine issue as to unlawfulness would be present, we cannot say that it was below the standard of professional competence to fail to request an affirmative defense instruction which may now be contemplated under uniform jury instructions. *See State v. Savage*, 115 N.M. 250, 255, 849 P.2d 1073, 1078 (Ct.App.1992) (holding that it is not ineffective assistance to fail to anticipate a change in the law and that counsel's performance is measured by the law in effect at the time of trial). Further even were an instruction on consent an affirmative defense, as Defendant contends, and as appears to be held in the cases he relies on, *see Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1287–88 (10th Cir.1999); *People v. Hearn*, 100 Mich.App. 749, 300 N.W.2d 396, 398 (1980), we question whether consent is an affirmative defense under the facts of this case.

{23} The only evidence presented in this case that might tend to bear on Defendant's

consent defense was the testimony of a polygrapher that Defendant was truthful in answers to questions whether he forced Wife to have sex. In particular, the polygrapher testified that Defendant was truthful when he said "no" to the question of whether he forced Wife to have sexual intercourse and he was truthful when he said "no" to the question of whether he threw Wife onto the bed forcing her to have sexual intercourse. Defendant also attempted to impeach Wife's testimony to show that she was upset or angry with him in relation to other matters and that she was fabricating her detailed testimony.

■ {24} The basic premise of the dissenting opinion is that a person can consent to having rough, violent, or forcible sex. We agree, but there is absolutely no evidence in this case that Wife consented to such a sexual encounter. And a party is not entitled to instructions that are not supported by the evidence. *See State v. Lopez,* 2000–NMSC–003, ¶¶ 23–26, 128 N.M. 410, 993 P.2d 727; *State v. Burdex,* 100 N.M. 197, 201, 668 P.2d 313, 317 (Ct.App.1983).

■ {25} "An affirmative defense ordinarily refers to a state of facts provable by defendant that will bar plaintiff's recovery once a right to recover is established." *Beyale v. Ariz. Pub. Serv. Co.,* 105 N.M. 112, 114, 729 P.2d 1366, 1368 (Ct.App.1986). As indicated, Defendant did not defend on the basis that he forcibly made Wife have intercourse with him but that she consented to a forced encounter, which would be a true affirmative defense. Instead, as indicated in the only testimony going to the issue, he claimed that he did not use force, and instead Wife consented to the intercourse, a defense in the sense of negating the element of force contained as part of the State's prima facie case. Because we are dealing with an ineffective assistance of counsel issue, and not an issue concerning when the new uniform jury instructions should be given, we need not technically decide whether they apply only to true affirmative defenses or to any case in which a defendant claims consent.

{26} It is sufficient for us to decide, on the ineffective assistance issue presented, that Defendant was not prejudiced. As in *Crain,*

1997–NMCA–101, ¶ 12, 124 N.M. 84, 946 P.2d 1095, the type of consent Defendant claimed was simply the opposite of the elements of cause and force instructed upon in the elements instruction. *See also State v. Fuentes,* 91 N.M. 554, 557, 577 P.2d 452, 455 (Ct.App. 1978) (questioning whether a defendant would ever be prejudiced by the failure to instruct on a defense that is just another way of saying that an element is not proved). The jury, having found that Defendant used force, necessarily found that Wife did not consent. In our view, a defendant would be prejudiced to the extent necessary to make out a prima facie case of ineffective assistance of counsel only if the type of consent that a defendant claimed was a true affirmative defense. In other words, it would only be where a defendant admitted forcing the victim to have intercourse, but claimed that the victim consented to such use of force, that our confidence in the verdict would be undermined if there was no separate instruction on consent. *Compare Lytle,* 2001–NMSC–016, ¶ 27, 130 N.M. 198, 22 P.3d 666 (describing standard for ineffective assistance of counsel), *with Poore v. State,* 94 N.M. 172, 174–75, 608 P.2d 148, 150–51 (1980) (describing the much lower standard for prejudice when an approved jury instruction, supported by the facts, is tendered and refused).

### c. Lack of Time to Investigate or Prepare

■ {27} Defendant contends that he was denied effective assistance of counsel because, after Defendant went through several lawyers, and trial was upon him, the lawyer who tried the case received the case only ten days before trial and did not have adequate time to investigate the case and to prepare for trial. Had his lawyer had adequate time, Defendant asserts, the outcome of the case would likely have been different. These circumstances, Defendant argues, constitute a prima facie case of ineffective assistance of counsel, entitling him to a remand for an evidentiary hearing on the issue. *See Swavola,* 114 N.M. at 475, 840 P.2d at 1241 (limiting remand in ineffective assistance cases to those "in which the record on appeal

establishes a prima facie case of ineffective assistance"). At the same time, Defendant acknowledges that where an ineffective assistance of counsel claim relies on and requires assessment of facts not contained in the record, as here, a defendant may be afforded relief, where appropriate, in a habeas corpus proceeding. Due to the lack of a sufficient showing of reversible error requiring remand on the record before us, we reject Defendant's contention that he has presented a prima facie case of ineffective assistance of counsel on the basis of lack of time. *See* *Herrera*, 2001–NMCA–073, ¶ 36, 131 N.M. 22, 33 P.3d 22 (setting out the factors for a prima facie case of ineffective assistance).

## CONCLUSION

{28} We affirm Defendant's convictions.

{29} **IT IS SO ORDERED.**

I CONCUR: LYNN PICKARD, Judge.

IRA ROBINSON, Judge (concurring in part and dissenting in part).

ROBINSON, Judge (concurring in part and dissenting in part).

{30} I respectfully dissent on the issue of consent as an affirmative defense and Defendant's right to an instruction thereon.

{31} I find the majority's discussion of two different kinds or types of consent defenses somewhat irrelevant. I believe that with the evidence presented and testimony given, Defendant was entitled to an instruction on consent as an affirmative defense. I would have so concluded, even before the UJI had been changed to accommodate such an affirmative defense. I would reverse and remand for a new trial.

{32} The majority states that "[t]he jury, having found that Defendant used force, necessarily found that Wife did not consent." Majority Opinion ¶ 26. I disagree.

{33} As anyone who has read the hundreds of medical and sociological reports and studies, or even watched "CSI" or a similar television show, knows there are people who willingly participate in what might be called "rough sex," which would contain elements of force, or even violence. It could probably qualify as common knowledge that these people do so on a consensual basis and apparently enjoy some sense of brutality. An element of force is very much a part of it. *See* Charles Moser, Ph.D., Professor of Sexology of the Institute for Advanced Study of Human Sexuality, *The Forensic Echo: Behavioral and Forensic Sciences in the Courts, Sado–Masochism: Harmless or Ominous?*, Issue 1, Vol. 5 (2001), available at http://echo.forensicpanel.com/2001/1/3/sado-masochismharmless.html. Therefore, having consensual sexual intercourse, containing both force and violence, may not be illegal. That is what the jury, properly instructed, must decide.

{34} If an affirmative defense of consent is not a true defense, the effect is to make legal activity illegal. If a party cannot consent to sex involving force or violence, then each act of "rough sex" in the State of New Mexico before 2005 was illegal. There are cases in which consensual actions are prohibited for a good purpose. In the case of statutory rape, the public has a proper interest in the protection of persons under the age of consent, who cannot be said to have the ability to consent themselves. *See* NMSA 1978, § 30–9–13 (2005) (defining criminal sexual contact of a minor as being on a child under thirteen years of age, or on a child thirteen to eighteen years of age, when the perpetrator is in a position of authority, uses force, coercion, or is armed with a deadly weapon). With the issue at hand, what would be the public interest in prohibiting an intimate activity between consenting adults? In *Lawrence v. Texas*, 539 U.S. 558, 560, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), the United States Supreme Court held that a Texas statute criminalizing sodomy between consenting homosexual males "furthers no legitimate state interest which can justify its intrusion into the individual's personal and private life."

{35} However, I cannot find ineffective assistance of counsel because, as the majority points out, defense counsel was following the law as it existed at the time of trial and that is all we expect of any reasonably competent attorney. *State v. Savage*, 115 N.M. 250, 255, 849 P.2d 1073, 1078 (Ct.App.1992).

{36} I reach the conclusion that we should reverse and remand based upon fundamental

error because a reasonable jury could be confused or misled when a jury is not properly instructed. *See State v. Parish*, 118 N.M. 39, 42, 878 P.2d 988, 991 (1994); *see also State v. Baca*, 1997–NMSC–045, ¶ 41, 124 N.M. 55, 946 P.2d 1066 ("Fundamental error only applies in exceptional circumstances when ... it would shock the judicial conscience to allow the conviction to stand.").

{37} I do not agree with the majority's conclusion that Defendant does not have a "true affirmative defense" here. Majority Opinion ¶ 25.

{38} I respectfully dissent.