**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 7, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PATRICK RYAN,

      Petitioner-Appellant,

v.

LUPE MARSHALL, Warden; GARY
L. KING, Attorney General of the
State of New Mexico,

      Respondents-Appellees.

No. 10-2126
(D.C. No. 1:09-CV-01193-RB)
(D. N. Mex.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **BRISCOE,** Chief Judge, **TACHA,** and **O'BRIEN**, Circuit Judges.

Patrick Ryan, a federal prisoner appearing pro se, seeks a certificate of

appealability ("COA") in order to challenge the district court's denial of his 28

U.S.C. § 2254 petition for a writ of habeas corpus. Because Ryan has failed to

satisfy the standards for the issuance of a COA, we deny his request and dismiss

this matter.

I

In July 2002, a state jury convicted Ryan of twenty counts of criminal

---

[*] This order is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel.

sexual penetration in the second degree, nine counts of criminal sexual contact, one count of aggravated battery, three counts of kidnapping, and one count of attempted criminal sexual penetration. The jury convicted Ryan based on evidence that he drugged the victim with bear tranquilizers and performed sexual acts on her in a rural area near Reserve, New Mexico. The evidence at trial included testimony from the victim, medical reports indicating she had been drugged, and videotapes of Ryan engaging in sex acts while the victim was in a comatose-like state. At the time of these incidents, Ryan and the victim, who are both wildlife biologists, were living near Reserve and studying the hibernation patterns of black bears on behalf of their employer, the Hornocker Wildlife Institute. Following Ryan's conviction, the state court sentenced him to 33 years of incarceration.

Ryan appealed his convictions and his sentence, alleging that the state court erred when it denied his motion to suppress evidence, his amended motion to suppress evidence, and his motion for a new trial based on jury and prosecutorial misconduct. In February 2006, the New Mexico Court of Appeals denied Ryan's appeal. Ryan subsequently filed a petition for writ of certiorari in the New Mexico Supreme Court, which was denied. Ryan then filed a petition for writ of certiorari in the United States Supreme Court, which was denied.

In August 2007, Ryan, acting pro se, filed a petition for habeas relief in New Mexico state court. The state court subsequently appointed habeas counsel

and ordered counsel to file an amended habeas petition. In the amended petition, Ryan alleged that (1) the prosecution violated his due process rights by withholding exculpatory evidence; (2) the prosecution violated his due process rights by tampering with evidence; (3) the state court violated his due process rights by admitting unproven scientific evidence; and (4) defense counsel violated his Sixth Amendment right to effective assistance of counsel. In September 2009, the state court entered an order explaining why an evidentiary hearing was not necessary and dismissing Ryan's amended habeas petition "for the reasons set forth in [the State's] Response to [Ryan's] Amended Petition for a Writ of Habeas Corpus." ROA Vol. 1, at 524. Ryan then filed a petition for writ of certiorari in the New Mexico Supreme Court, which was denied.

In December 2009, Ryan initiated federal habeas proceedings by filing a pro se § 2254 motion with the United States District Court for the District of New Mexico. In this petition, Ryan alleged the same four claims contained in his habeas petition in the state court. Ryan's petition was assigned to a magistrate judge, who reviewed the record and recommended that the district court deny Ryan's request for habeas relief. Ryan filed an objection to the magistrate judge's findings and recommendation. The district court reviewed the magistrate judge's recommendations de novo and agreed with each of his conclusions. Accordingly, the district court adopted the magistrate judge's conclusions and denied Ryan's petition with prejudice. The district court also denied Ryan's later

3

request for a COA, but allowed its earlier grant of Ryan's request to proceed in forma pauperis to continue on appeal.

Following the district court's order, Ryan filed with this court a notice of appeal, a request for a COA, and a motion to proceed in forma pauperis.

II

Issuance of a COA is jurisdictional. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In other words, a state prisoner may appeal from the denial of federal habeas relief only if the district court or this court first issues a COA. 28 U.S.C. § 2253(c)(1)(A); see Montez v. McKinna, 208 F.3d 862, 867 (10th Cir. 2000). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make that showing, a prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

In addressing whether reasonable jurists could debate whether a § 2254 habeas petition should have been resolved differently, a federal court must review the claims in the state habeas petition and make a general assessment of their merits in light of the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Miller-El, 537 U.S. at 336. Under this statute, a federal court may not issue a writ of habeas

4

corpus unless the state court's adjudication of the habeas petition:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## III

In order to address Ryan's request for a COA, we must first analyze the four grounds upon which he alleged he was entitled to state habeas relief and explain why the state court denied his petition.

### *Withholding of Exculpatory Evidence*

Ryan alleged the prosecution violated his due process rights by withholding two of the thirteen videotapes found on his property and by withholding a letter written by the victim to her friend.[1]  According to Ryan, this evidence indicated that he was involved in a consensual sexual relationship with the victim, and it contradicted the prosecution's theory that Ryan drugged and then raped her.

The prosecution argued that Ryan's claim failed for three reasons.  First, the it noted that because Ryan did not allege on direct appeal that the prosecution

---

[1] There is some confusion on the record regarding whether the prosecution withheld the videotapes and the letter or whether the defense simply chose not to introduce this evidence at trial.  For the purposes of its order, the district court assumed the evidence was withheld.  We will assume the same.

5

withheld exculpatory evidence, he was likely barred from asserting this claim in a petition for habeas relief. See Duncan v. Kerby, 851 P.2d 466, 468 (N.M. 1993); State v. Gillihan, 524 P.2d 1335, 1336 (N.M. 1974). Second, the state argued that this evidence was not material to Ryan's defense because at the time of his trial and conviction in 2002, lack of consent was not an essential element of the charge of criminal sexual penetration. See State v. Jensen, 118 P.3d 762, 768 (N.M. App. 2005). Thus, according to the prosecution, even if this evidence revealed that the victim consented to having sex with Ryan, this fact would not have aided his defense. See id. ("the defense of consent is not available to defendant because lack of consent is not an element of [criminal sexual penetration]") (citation and internal quotation marks omitted).

Finally, the state argued that it did not wrongfully withhold this evidence because it was cumulative of the evidence presented at trial. Ryan admitted in his opening brief on direct appeal that certain videotapes introduced at trial showed the victim "awake, lucid, in motor control, participating in sex, and sexually aroused." ROA Vol. 1, at 478. Thus, the state argued that it did not improperly withhold evidence of the victim's consent because the jury was presented with evidence of the parties' sexual relationship and nonetheless convicted Ryan of the crimes charged.

The state court agreed with the prosecution and concluded, for the reasons stated in the prosecution's response, that the state did not violate Ryan's due

6

process rights by withholding the two videotapes and the letter in question.

*Tampering with Evidence*

Ryan also alleged that the prosecution violated his due process rights by tampering with evidence. According to Ryan, the state wilfully omitted from the videotape footage it showed at trial, depictions of him suffering from the effects of the same environmental toxins he alleges caused the victim's comatose-like state. Ryan argued that had the prosecution shown the tapes in their entirety, the jury would have concluded that both parties suffered from exposure to these toxins and that Ryan therefore did not drug the victim.

The prosecution argued that Ryan's claim failed for two reasons. First, as with his claim for failure to disclose exculpatory evidence, Ryan did not allege on direct appeal that the prosecution wrongfully withheld certain portions of the videotapes from the jury. See generally id. at 125-61. Thus, Ryan was likely foreclosed from raising this argument in his habeas petition. See Duncan, 851 P.2d at 468; Gillihan, 524 P.2d at 1336.

Second, the prosecution argued that it did not unfairly prejudice Ryan by editing the videotapes because the evidence allegedly contained in the videotapes was cumulative of the evidence he presented at trial. This is because, at trial, Ryan introduced evidence through which he attempted to portray himself as having been exposed to environmental toxins. Ryan presented evidence that he had crashed an automobile near Reserve and had to be transferred to an

7

Albuquerque hospital, apparently to be treated for exposure to harmful drugs. The prosecution argued that because Ryan introduced this evidence in order to show that he had been impaired by environmental toxins, its decision to show only snippets of the sexually graphic video footage did not violate Ryan's due process rights.

The state court agreed with the prosecution and concluded, for the reasons stated in the state's response, that the prosecution did not violate Ryan's due process rights by editing the videotapes in question.

*Ineffective Assistance of Counsel*

Finally, Ryan argued that he received ineffective assistance from his attorney in violation of his Sixth Amendment rights. According to Ryan, his counsel failed to conduct an adequate investigation, failed to pursue potentially meritorious pre-trial motions, failed to retain expert witnesses, and failed to keep him reasonably informed regarding his defense.

*1.    Failure to Conduct an Adequate Investigation*

Ryan alleged his attorney prejudiced his defense by failing to investigate facts that would have revealed that the victim consented to having a sexual relationship with him. Specifically, Ryan claims his attorney failed to adequately investigate the two missing videotapes, the victim's letter to her friend, her diary, the couple's vacation to Yellowstone National Park, and the testimonies of their friends—all of which proved that the parties were involved in a consensual

8

relationship.

The state argued that defense counsel's alleged refusal to investigate these facts was not improper because they would not have bolstered Ryan's defense at trial. The prosecution again noted that evidence of the victim's previous consent to sexual activity would not have assisted Ryan because at the time of his trial and conviction, lack of consent was not an essential element of the charge of criminal sexual penetration. See Jensen, 118 P.3d at 768. Thus, according to the prosecution, even if counsel had gathered additional evidence of the parties' consensual relationship, it would not have negated the prejudice that Ryan claimed he suffered.[2]

Ryan also argued his attorney violated his constitutional rights when he failed to investigate Ryan's claim that the victim consented to being drugged based on her belief in "secondary virginity." According to Ryan, the victim held strong religious beliefs that prevented her from actively consenting to sexual relations. Nonetheless, the victim overcame the tension between her religious convictions and her desire to have sex with Ryan by consenting to being drugged. This way, she did not consciously choose to engage in sexual activity and could

---

[2] The district court rejected Ryan's assertion for a different reason. It concluded that defense counsel's alleged failure to investigate was not prejudicial because Ryan introduced evidence at trial of his sexual relationship with the victim, including the fact that they were engaged to be married at one point. The district court reasoned that since the jury heard this evidence and nonetheless convicted Ryan, any failure on the part of defense counsel to find more evidence of consent was not prejudicial.

therefore maintain her "secondary virginity."

The prosecution addressed this argument in detail in its response, arguing that—even if consent had been a viable defense—Ryan's attorney acted reasonably in choosing not to introduce evidence of the victim's belief in "secondary virginity." First, the prosecution argued that this "bizarre" theory was unlikely to persuade a jury and might even offend them. ROA Vol. 1, at 460, 464. The state further argued that presenting this defense would have obligated Ryan to admit he drugged the victim into a comatose state and then had sex with her. According to the prosecution, this would have essentially required counsel to concede the elements of the crime of criminal sexual penetration, which could have been a disastrous trial strategy. Finally, the prosecution argued that in order to effectively present such an unusual defense, counsel would have needed to call Ryan as a witness and subject him to cross-examination, at which point the state would have questioned Ryan regarding his history of dishonest behavior. For example, Ryan admitted in a pre-trial hearing that he lied in order to obtain his job at the Hornocker Wildlife Institute and to obtain his driver's license. Id. at 463.

The state court agreed with the prosecution and held, for the reasons stated in the state's response, that the state did not violate Ryan's Sixth Amendment rights by failing to investigate facts regarding the parties' sexual relationship or by choosing not to pursue Ryan's secondary virginity theory at trial.

10

*2.    Failure to Pursue Potentially Meritorious Pre-Trial Motions*

Ryan also argued that his attorney violated his Sixth Amendment rights when he failed to move to exclude the testimony of Dr. Middleberg, the state's expert witness. At trial, Middleberg testified that hair samples taken from the victim indicated that she had been drugged with bear tranquilizers. According to Ryan, Dr. Middleberg's testimony was suspect because it relied on "a new technique designed only for the present case" and because his conclusions "fell into the category of mere speculation." Id. at 441. Ryan further alleged his attorney should have moved to exclude Dr. Middleberg's testimony because Dr. Middleberg "claimed that he received the samples from the prosecution" even though other evidence at trial indicated that the victim sent her hair samples directly to the lab. Id. at 440.

The prosecution argued in response that Ryan's attorney did not have a good faith basis upon which to move for the exclusion of Dr. Middleberg's testimony. First, the prosecution argued that defense counsel did not act improperly when he failed to object to Dr. Middleberg's testimony on the grounds that it was based on speculation and unsubstantiated scientific analysis. The state pointed out that defense counsel informed the court during the trial that Dr. Walls, the defense's expert, "sa[id] many of the same things as Dr. Middleberg . . . and may agree with him on every point." Id. at 469. According to the state, because the defense's own expert came to the same conclusions as Dr.

11

Middleberg, Ryan's attorney was justified in not moving to exclude Dr. Middleberg's report.

In addition, the state argued that any potential dispute regarding how Dr. Middleberg received the hair samples was irrelevant to the substance of his expert testimony. According to the prosecution, this is because Dr. Middleberg never opined as to how the drugs got into the victim's body; he only testified regarding what those drugs were. Thus, the jury could appropriately weigh Dr. Middleberg's testimony regarding the toxins even if he was unsure how they got into the victim's body or who sent them to the laboratory.

The state court agreed with the prosecution and concluded, for the reasons stated in the prosecution's response, that Ryan's attorney did not violate his Sixth Amendment rights when he failed to move to exclude Dr. Middleberg's testimony.

3.    *Failure to Retain an Expert Witness*

Ryan also alleges his attorney violated his Sixth Amendment rights by failing to retain an independent expert witness to rebut Dr. Middleberg's testimony. Although defense counsel hired Dr. Walls to testify, Ryan alleges his attorney "never requested that Dr. Walls conduct a full evaluation of the State's scientific/medical evidence and failed to provide [Dr. Walls] with any of the hard data necessary for a proper analysis." Id. at 443. According to Ryan, his attorney attempted "in a last ditch botched effort" to have Dr. Walls testify towards the

12

end of the trial, but was unsuccessful. Thus, Ryan alleges that as a result of his attorney's failures, "the jury was left with the impression" based on "the State's voodoo science" that Ryan drugged the victim. Id.

In response, the prosecution argued that Ryan's attorney acted reasonably in not calling Dr. Walls to testify. The state noted the well-established rule that "[t]he decision whether to call a witness is a matter of trial tactics and strategy within the control of trial counsel." State v. Harrison, 7 P.3d 478, 493 (N.M. 2000). Further, the prosecution pointed out that the record indicated that Dr. Walls reviewed Dr. Middleberg's testimony and informed defense counsel that he agreed with Dr. Middleberg's conclusions. The state argued that, given this fact, defense counsel's decision not to call Dr. Walls to testify was proper because his testimony likely would have bolstered Dr. Middleberg's conclusions.

The prosecution also argued that Ryan's claim that his attorney should have called a different expert witness to rebut Dr. Middleberg lacked merit. This is because in his habeas petition, Ryan did not actually identify a potential expert witness or scientific theory that could have effectively rebutted Dr. Middleberg's testimony; he simply alleged that his attorney should have found an expert that could do so. As a result, the state argued that Ryan's arguments on this matter were based on pure speculation and were therefore insufficient to sustain a claim for ineffective assistance of counsel.

The state court agreed with the prosecution and held, for the reasons stated

13

in the state's response, that Ryan's counsel did not violate his Sixth Amendment rights by choosing not to call an expert witness to rebut Dr. Middleberg's testimony.

*4.     Failure to Keep Client Reasonably Informed*

Finally, Ryan asserted that his attorney violated his Sixth Amendment right to effective assistance of counsel by failing to respond to his letters, his requests for discovery, and his phone calls. Ryan further alleged that his attorney did not keep him reasonably informed regarding his defense because he did not allow Ryan to make decisions regarding his "basic trial rights." ROA Vol. 1, at 444 (internal quotation marks omitted).

The state argued that Ryan's assertions lacked merit because he never alleged in his habeas petition how the trial would have gone differently had his attorney communicated with him properly. Although Ryan alleged his attorney should have permitted him to make decisions regarding his basic trial rights, Ryan never identified these rights or stated how his defense was prejudiced in this regard.

The state court agreed with the prosecution and held, for the reasons stated in the state's response, that Ryan did not assert a valid Sixth Amendment claim based on failure to communicate.

IV

Having thoroughly reviewed Ryan's application for a COA and the record

14

on appeal, we conclude that the district court's denial of Ryan's habeas petition is not reasonably subject to debate, nor are Ryan's arguments adequate to deserve further proceedings. In so holding, we conclude that the district court properly applied the standard of review set forth in 28 U.S.C. § 2254(d), which permits a federal court to issue a writ of habeas corpus only if the state court unreasonably applied federal law or made an unreasonable determination of the facts in light of the evidence presented. Given this standard, we conclude that the district court properly reviewed the state court record and concluded Ryan was not entitled to federal habeas relief based on his assertion that the state violated his due process rights and that his attorney violated his right to effective assistance of counsel.

Accordingly, Ryan's motion to proceed in forma pauperis is DENIED as moot, his request for a COA is DENIED, and his appeal is DISMISSED.

Entered for the Court

Mary Beck Briscoe
Chief Judge