854 P.2d 363

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Nathan BACA and Eddie Chavez,
Defendants–Appellants.**

No. 13634.

Court of Appeals of New Mexico.

April 7, 1993.

Certiorari Denied May 20, 1993.

Tom Udall, Atty. Gen. and Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender and Rita LaLumia Berg, Asst. Appellate Defender, Santa Fe, for defendants-appellants.

### OPINION

MINZNER, Chief Judge.

These consolidated appeals arise out of an incident at the New Mexico Boys' School in which Defendants stabbed another resident of the Boys' School. Defendants appeal their convictions for aggravated battery, conspiracy to commit aggravated battery, and possession of a deadly weapon by a prisoner. They raise two issues on appeal: (1) whether the trial court erred in denying their motion for release of the victim's master file; and (2) whether they received effective assistance of counsel. Defendants have expressly waived other issues listed in the docketing statement but not briefed. *See State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.), *cert. denied*, 102 N.M. 734, 700 P.2d 197 (1985). Regarding the first issue, we determine that the trial court did not err in denying the motion, because the court granted broad discovery of matters within the file and the only limitation Defendants argue as error on appeal concerned inadmissible propensity evidence. In making this determination, we hold that specific instances of a victim's prior conduct are not admissible to prove that the victim was the first aggressor, *see* SCRA 1986, 11–405, and that the Supreme Court opinion in *State v. Baca*, 114 N.M. 668, 845 P.2d 762 (1992), is not to the contrary. Regarding the second issue, we determine that Defendants have not established a prima facie case of ineffective assistance of counsel requiring remand for an evidentiary hearing. Therefore, we affirm.

### FACTS.

Correctional officer trainee Charles Howard was on duty in the sleeping area on the night of the incident. After the lights were turned off for the night, Howard heard Baca snap his fingers and call out to him. While the officer looked toward Baca to see what he needed, he caught glimpses of movement to his right. Howard saw Chavez get out of bed and approach the victim's bed. Chavez was hitting the victim in an up and down motion. Howard turned on the lights, and saw both Defendants at the victim's bed. Baca was also hitting the victim in an up and down motion. Each Defendant was carrying a blood-covered knife, or "shank." Howard heard the victim say that he had been stabbed. Defendants went into the day room, refusing to give up their weapons. Chavez said "You fink, you'll never snitch again," apparently referring to the victim. Defendants surrendered themselves and the shanks after about a one-hour standoff with school officials.

The victim testified that he awakened when he felt he was being poked. He realized he was bleeding and had been stabbed. The victim saw both Defendants by his bed holding shanks. He heard Chavez say "That's what they do to rats." Both Defendants testified. Neither denied stabbing the victim, although Baca said he didn't know whether he stabbed the victim. Neither Defendant was injured.

The State's theory of the case was that Defendants stabbed the victim to punish him for "snitching" on them about some stolen keys. There was evidence that, about two weeks prior to the incident, the victim had accused Defendants of stealing his keys. A staff member confronted Chavez about the keys. Chavez denied any involvement.

Defendants claimed that they acted in self-defense, and the jury was so instructed. Chavez testified that he went to talk to the victim "man to man" about the keys. During their conversation, the victim pulled a shank and tried to stab Chavez. Baca then came to Chavez's aid. The victim pulled a second shank, and tried to stab Baca.

Defendants presented considerable evidence tending to show their apprehension of the victim and that he was the first aggressor. The victim admitted on cross-examination that he had been sent to the Boys' School because of an adjudication for aggravated assault with a firearm. He also admitted that he had spent the earlier part of the day of the stabbing in maximum security after a fight with another resident. Julio Rodriguez, another resident, testified that about a week before the stabbing, he heard the victim threaten that he wanted to get Baca by himself.

The victim testified that he told Defendants prior to the stabbing that he would " 'get them by themselves and beat the holy shit out of them.' " He claimed Defendants hit him almost every day for no reason. The victim and Defendants also had a dispute prior to the stabbing concerning the victim's refusal to join a gang. Rodriguez testified that he warned Baca about the victim's threats on the day of the stabbing. He told both Defendants to be careful. Chavez testified that he had heard rumors that the victim wanted to fight him over the key incident. On the night of the stabbing, he said that he tried to talk to the victim about the incident, but the victim was abusive and pulled out a knife. Baca testified that he went to Chavez's aid when he heard him yell for help. According to Baca, the victim threatened him and came at him with another knife. Baca claimed that the victim still had one of the knives when he and Chavez retreated to the day room. Baca also related his efforts to defuse the problems before the stabbing. He testified that he approached a staff member prior to the stabbing concerning the victim's threats.

*THE MASTER FILE.*

During a pretrial motion hearing, Defendants asked that the district judge order the State to release the victim's master file. Defense counsel explained that the Boys' School compiled a "master file" of each boy and that such master file contains "any psychiatrics done, all previous arrests, any forensics that may have been done, any adjudications, any problems he's had at the Boys' School, any problems elsewhere, family's history. It's a complete background of the person."

Defense counsel specifically stated several times that he did not know what was in the file. Additionally, defense counsel did not know specifically how anything in the victim's master file would aid in his clients' defense. The district judge ordered the State to release almost all the records defense counsel requested. In fact, the district judge, explaining that because the victim's character was at issue due to Defendants' self-defense claim, ordered the release of "any kinds of reports or evaluations of the child and his character," in addition to any forensic evaluations of the victim and any investigative reports of the stabbing incident. The district judge, however, did not require the State to release any reports in the master file that detailed specific instances of the victim's prior conduct in which Defendants were not implicated.

Defendants concede that release of a witness's arrest record under SCRA 1986, 5–501(A)(5) (Repl.1992), is discretionary with the trial court. *See State v. Smith*, 92 N.M. 533, 539–40, 591 P.2d 664, 670–71 (1979). Nonetheless, they argue that the State was constitutionally required to produce the information pursuant to SCRA 5–501(A)(6). *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). On appeal Defendants make two arguments that the trial court erred in ruling on their motion. First, Defendants argue that the trial court prevented them from presenting a defense, and second, Defendants argue that the trial court's order was contrary to New Mexico's discovery rule, which requires the State to disclose "any material evidence favorable to the defendant which the state is required to produce under the due process clause of the United States Constitution." SCRA 5–501(A)(6); *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97.

In order for either of Defendants' arguments to support reversal, the trial court's order must have prejudiced the defense. SCRA 1986, 5–113(A) (Repl.1992) (harmless error not reversible). Defendants in effect argue that they were prejudiced because the limitations imposed by the trial court excluded exculpatory information that would have been admissible.

■ The narrow, dispositive issue in this case, then, is whether specific instances of a victim's prior conduct of which the Defendants were not aware would have been admissible to support Defendants' theory of the case. We believe the answer depends on whether Defendants would have been entitled to offer such evidence to prove the victim was the first aggressor in the incident material to this appeal.

The State argues that the trial court properly exercised its discretion in excluding evidence of specific acts of violence by the victim which were not known by Defendants, because that evidence would have been immaterial, cumulative, and more prejudicial than probative. *See Baca*, 114 N.M. at 671, 845 P.2d at 765. We think this argument assumes that the excluded evidence would have been admissible. We hold it would not have been admissible.

*A. The Admissibility of Evidence of Specific Incidents of Violence to Prove that the Victim Was the First Aggressor.*

The State's argument treats *Baca*, decided while this case was pending on appeal, as holding that Defendants were entitled to offer evidence of specific incidents involving violence other than those of which they were aware. *See State v. Lamure*, 115 N.M. 61, 846 P.2d 1070 (Ct.App.1992) (No. 13,255) (Hartz, J., specially concurring) (under *Baca*, evidence of specific acts to establish violent disposition may be admissible). While the State's view is understandable, *see Baca*, 114 N.M. at 671–72, 845 P.2d at 765–66 (noting confusion in New Mexico law on the question of whether evidence of a victim's prior violent acts is admissible unless they are acts of which the defendant had knowledge); *see also Trujillo v. Sullivan*, 815 F.2d 597, 612 n. 8 (10th Cir.), *cert. denied*, 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987), we do not read *Baca* so broadly.

■ Where a defendant claims self-defense, and "the conduct is offered to show that the victim was the first aggressor, the defendant's knowledge of the victim's violent conduct is irrelevant and does not need to be shown." *Baca*, 114 N.M. at 671, 845 P.2d at 765; *see also State v. Salgado*, 112 N.M. 793, 796, 819 P.2d 1351, 1354 (Ct.App. 1991); *cf. State v. Ewing*, 97 N.M. 235, 638 P.2d 1080 (1982) (if specific instances of the victim's conduct are offered to prove the reasonableness of the defendant's apprehension, the defendant must have known about those acts). However, the trial court retains "discretion to exclude specific instances of the victim's conduct if the evidence is substantially more confusing, cumulative, or prejudicial than probative." *Baca*, 114 N.M. at 671, 845 P.2d at 765; SCRA 1986, 11–403. "[A]n abuse of discretion may be found only if the exclusion of the evidence precluded the criminal defendant from proving an element of his de-

fense." *Baca*, 114 N.M. at 672, 845 P.2d at 766.

Further, unless character is an essential element of a defense, only reputation and opinion are acceptable forms of proof. *See Perrin v. Anderson*, 784 F.2d 1040, 1045 (10th Cir.1986); SCRA 11–405. The only purpose for the records mentioned in the appellate briefs is to obtain evidence of specific violent conduct by the victim which can be used to establish the victim's violent disposition for the purpose of corroborating Defendants' claim of self-defense. SCRA 11–405 makes clear that character may not be proved through evidence of specific instances of a person's conduct unless the person's character is an essential element of a charge, claim, or defense. The victim's violent disposition is not an "element" of the defense in the strictest sense; rather, it is used circumstantially—that is, to help prove that the victim acted in the particular manner at the time of the incident in question. Therefore, under SCRA 11–405, evidence of the victim's specific violent acts is not admissible to prove that the victim acted violently on the specific occasion. *Perrin*, 784 F.2d at 1044–45.

Nevertheless, the language we have quoted from *Baca* is very broad, and both the State and Defendants appear to have construed *Baca* as allowing the use of specific instances of conduct to show that the victim was the first aggressor on the ground that when that issue is raised, character is "an essential element" of the defense within the meaning of SCRA 11–405(B). While we are conscious of the controlling nature of Supreme Court precedent, *see Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973), we do not believe that the Supreme Court meant to expand the scope of SCRA 11–405(B) in *Baca*.

We note that the language in *Baca* on which Defendants rely was not necessary to the court's resolution of the issues in that case, because the Supreme Court ultimately affirmed the trial court's decision not to admit the evidence of specific instances of conduct in question. In addition, the Court focused on distinguishing the two different purposes of other evidence of violent acts: (a) to explain a defendant's fear and establish that it was reasonable; and (b) to establish a victim's propensity for violence in order to persuade the fact-finder that it is more likely than not that the victim was the first aggressor. *Baca* in fact cites *Perrin* in identifying these very different purposes. *Baca*, 114 N.M. at 672, 845 P.2d at 766.

In *Perrin*, the federal appellate court clearly limits proof of character for purposes of establishing who was the first aggressor to evidence of reputation or opinion. 784 F.2d at 1045. However, the Court held that the limitations on the methods of proving character set out in Federal Rule of Evidence 405 do not apply to proof of habit. *Id.* at 1046; *see* SCRA 1986, 11–406. Under SCRA 11–406, testimony concerning prior specific incidents is allowed. *Id.* In addition, evidence of prior specific incidents may also be admitted under SCRA 1986, 11–404(B). Given the latitude that is available under other rules, we are not persuaded that the Supreme Court meant to modify SCRA 11–405(B). Had the Supreme Court intended that result, we believe *Baca* would have been explicit.

■ For these reasons, we do not read *Baca* as permitting the introduction of specific instances of conduct under SCRA 11–405(B) to show that the victim was the first aggressor, although evidence of reputation or opinion would be admissible for that purpose under SCRA 11–405(A). We do read *Baca* as clarifying New Mexico law on the issue of whether, when evidence of reputation or opinion is offered under SCRA 11–405(A) to show that the victim was the first aggressor, a defendant must have been aware of that reputation or opinion. Under *Baca*, the answer is no. Because specific instances of conduct are not admissible to show that the victim was the first aggressor, we hold that the trial court did not deprive Defendants of any evidence that would have aided them in their defense. Such evidence would not have been admissible, and therefore its absence could not have been prejudicial to the defense. We do, however, briefly address Defendants' argument based on *Brady*.

*B. Materiality under Brady v. Maryland.*

■ For the purposes of this discussion, we assume that specific instances of conduct would have been admissible to show that the victim was the first aggressor. Evidence is material under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). In evaluating the materiality of the suppressed evidence, "we must place it in the context of the entire record." *Trujillo,* 815 F.2d at 613. "Evidence that may first appear to be quite compelling when considered alone can lose its potency when weighed and measured with all the other evidence, both inculpatory and exculpatory." *Id.*

When evaluating "materiality" in the *Brady* context, the usual legal denotation of the word "material" in the evidentiary sense must be clearly distinguished from the word's meaning in this constitutional sense. The use of the word "material" as the benchmark in both circumstances is unfortunate, for its meaning in the two contexts is radically disparate. Evidence clearly "material" and admissible as a threshold proposition may be deemed to be "immaterial" in retrospect in a *Brady* inquiry.

In the evidentiary sense, we are narrowly looking to whether the proposition toward which the evidence is directed is a necessary element of the crime or a defense. In the constitutional sense, we are looking at the entire trial to determine whether the defendant's conviction was obtained by violating due process, whether his or her trial was tainted with fundamental unfairness because certain evidence was not disclosed to the defense.

815 F.2d at 612–13 n. 9.

■ The State maintains that any additional evidence would have been cumulative, immaterial, and more prejudicial than probative. It points to evidence presented at trial, cited above, that the victim was in the Boys' School because of an assault with a firearm, that Defendants were aware of a fight between the victim and another boy earlier on the day of the stabbing, and that Defendants knew of threats made by the victim against them. Thus, the State argues that any other evidence of the victim's violent tendencies would not have presented a new issue critical to Defendants' guilt or innocence; it would simply have been cumulative. *See Trujillo,* 815 F.2d at 614. Since the trial court ordered disclosure of any incidents involving the victim and Defendants, further evidence would simply have been circumstantial proof that the victim was the first aggressor. *See id.*

We agree with the State's recitation of the law. However, we would not be able to assess the materiality of the suppressed evidence in the *Brady* context without knowing what evidence was suppressed. In *Trujillo,* both the trial and appellate courts knew what evidence had been suppressed, and the courts could therefore properly conclude that the evidence was both cumulative and immaterial. It could well be the case here that additional evidence of aggressive or violent acts by the victim, if any, would be cumulative in light of the evidence presented at trial. However, the exclusion of even cumulative evidence may be prejudicial if the additional evidence comes from independent sources and not witnesses connected with Defendants or their families. *See Chacon v. State,* 88 N.M. 198, 200, 539 P.2d 218, 220 (Ct.App.1975).

We note that Defendants in this case did not request below or on appeal that the district court review the master file in camera. Therefore, although we believe that the circumstances here are otherwise similar to those in *State v. Pohl,* 89 N.M. 523, 554 P.2d 984 (Ct.App.1976), that case is not controlling.

In *Pohl,* the defendant was convicted of battery on a peace officer. The defendant moved to discover records of investigations concerning allegations of police brutality against the arresting officer. The trial court refused the defendant's motion, as well as his request for an in camera inspec-

tion of the files to determine whether any portion was relevant. The officer was cross-examined concerning the two instances of alleged brutality; thus, the State argued that there was no prejudice. This Court conditionally affirmed, noting that "[i]n the absence of a determination of what the files would have shown we cannot hold there was no prejudice." *Id.* at 525, 554 P.2d at 986. We remanded the case to the trial court for an in camera hearing to determine whether the arresting officer's files contained material matters. We noted that the defendant had shown as specific a need as could be expected under the circumstances. *Id.* at 524, 554 P.2d at 985. As in *Pohl*, we cannot determine whether the suppressed evidence was material to Defendants' claim of self-defense, but, unlike *Pohl*, Defendants neither requested an in camera hearing nor showed "as specific a need as could be expected under the circumstances." *Id.; cf. State v. Roybal*, 115 N.M. 27, 846 P.2d 333 (Ct.App.) (No. 13,094) (defendant failed to make requisite showing of need to inspect internal affairs files of one officer when he relied on a newspaper article suggesting that another officer had provided false information), *cert. denied*, 114 N.M. 550, 844 P.2d 130 (1992) (No. 20,907).

Rather, our review of the argument made during the motion hearing convinces us that Defendants were on a " 'fishing expedition.' " *Pohl*, 89 N.M. at 524, 554 P.2d at 985; *see also State v. Turner*, 81 N.M. 571, 573, 469 P.2d 720, 722 (Ct.App. 1970). Defendants made no showing that their rights would be violated but for full disclosure of the master file, nor do they now argue that the State suppressed material contrary to the trial court's order. *See id.* Further, we believe that Defendants in this case made an even weaker showing that they needed the file than did the defendant in *Roybal. Cf. Roybal*, 115 N.M. at 30, 846 P.2d at 336 (although defendant relied on a newspaper article to cast doubt on an officer's credibility in attempt to get an in camera inspection of that officer's internal affairs files, defendant "did not make any showing that the internal affairs files contained information material to the

preparation of his defense."). Thus, even if we were inclined to sua sponte order the district court to review the master file in camera, Defendants have not convinced us that such action is appropriate. The trial court's order is therefore affirmed.

## INEFFECTIVE ASSISTANCE OF COUNSEL.

Defendants claim that their trial counsel were ineffective in two instances. They first contend that trial counsel should have arranged a physical examination of the knives. Defendants also argue that their counsel were ineffective in failing to pursue a duress defense. The State responds that Defendants have not made out a prima facie case of ineffective assistance because there were rational bases for trial counsel's decisions.

■ To demonstrate ineffective assistance of counsel, a defendant must show both that his counsel's performance fell below that of a reasonably competent attorney and that he was thus prejudiced. *State v. Talley*, 103 N.M. 33, 702 P.2d 353 (Ct.App.1985). We are reluctant to decide claims of ineffective assistance absent a district court evidentiary hearing on the matter. *State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct.App.), *cert. denied*, 114 N.M. 501, 841 P.2d 549 (1992). We will remand for an evidentiary hearing where the record on appeal establishes a prima facie case of ineffective assistance. *Id.; State v. Powers*, 111 N.M. 10, 800 P.2d 1067 (Ct.App.), *cert. denied*, 111 N.M. 16, 801 P.2d 86 (1990). "[A] prima facie case is not made when a plausible, rational strategy or tactic can explain the conduct of defense counsel." *Swavola*, 114 N.M. at 475, 840 P.2d at 1241; *see also State v. Dean*, 105 N.M. 5, 8, 727 P.2d 944, 947 (Ct.App.) (appellate court will not second-guess tactics and strategy of trial counsel on appeal), *certs. denied*, 104 N.M. 702, 726 P.2d 856 (1986).

### A. The Knives.

■ Before trial, Baca moved the trial court to order the State to have the knives analyzed for blood and fingerprints. The

trial court denied Baca's motion. At trial, Officer Pat Nolan testified that the State did not perform any tests on the knives because the prosecutor thought it unnecessary. Defendants contend that their counsel were ineffective because they failed to arrange independent testing of the knives. They assert that analysis of the weapons "may have revealed exculpatory evidence."

Counsel's reasons for failing to test the knives are not part of the record before us. For that matter, we cannot say from the record that the knives were not tested. Nevertheless, assuming that the knives were not tested, we believe there was a "plausible, rational strategy or tactic" explaining counsel's conduct; hence, Defendants have failed to establish a prima facie case. *See Swavola*, 114 N.M. at 475, 840 P.2d at 1241. The victim bled profusely from the attack while Defendants were uninjured. Thus, an analysis of the blood on the knives would almost certainly have helped the prosecution and hurt Defendants. Defense counsel is not ineffective in foregoing testing when the testing will only assist the prosecution. *See United States v. Baca*, 687 F.2d 1356 (10th Cir. 1982).

We now address trial counsel's failure to test the knives for fingerprints. The victim's fingerprints on the knives would have supported Defendants' theory that he was the initial aggressor. However, the knives were small. Both Defendants held on to the knives for about an hour after the incident. A correctional officer then touched the handles of the knives when he picked them up. We agree with the State that the chance that the victim's fingerprints would have remained on the knives was fairly remote. Again, testing the knives would probably only have helped the State, since it was also almost certain that Defendants' fingerprints would have been found. *See United States v. Baca*, 687 F.2d at 1360–61.

Defendants also argue that they had nothing to lose from the testing. Citing SCRA 1986, 5–502 (Repl.1992), they contend that they would not have had to disclose the test results to the State if they were unfavorable. While a defendant is not required to disclose test results not intended to be introduced at trial, SCRA 5–502(A)(2), this does not mean that the State could not have arranged to have observed the testing or conducted its own independent tests. Besides, the fact that testing "would not have hurt" or "may have helped" is insufficient to establish prejudice, the second prong of the test for ineffective assistance.

### B. Duress Defense.

■ Defendants claimed at trial that they acted in self-defense. On appeal, they contend that their trial counsel were ineffective because they did not tender instructions on duress. Specifically, they argue that (1) a duress instruction was supported by the evidence; (2) the duress instruction, SCRA 1986, 14–5130, emphasizes that they acted under threats, thereby reminding the jury of evidence favorable to them; and (3) the duress instruction explicitly allocates the burden of proof to the state, whereas the self-defense instruction, SCRA 1986, 14–5183, does not.

■ Trial counsel's strategic choice made as a result of investigation as to what defense to pursue is "virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Counsel's choice of defenses will not be disturbed unless the choice appears wholly unreasoned or deprives the defendant of his only defense. *See Talley*, 103 N.M. at 38, 702 P.2d at 358 (defense counsel's failure to tender instructions to jury on defense of inability to form specific intent was ineffective where it resulted in no defense being presented to two of the charges); *Capps v. Sullivan*, 921 F.2d 260 (10th Cir.1990) (trial counsel was ineffective in failing to request entrapment instruction where defendant admitted all elements of the crime).

While the duress defense is available to the charge of possession of a deadly weapon by a prisoner, it is extremely limited. *See Baca*, 114 N.M. at 673–75, 845 P.2d at 767–69. The defendant must produce sufficient evidence that he could not have rea-

sonably avoided the criminal conduct in which he engaged, and prove that a direct causal relationship existed between the criminal action and the avoidance of the threatened harm. *Id.* at 674–75, 845 P.2d at 768–69. We believe that it was rational for trial counsel to reject pursuit of a duress defense to the possession charge. While Defendants could have argued duress for the brief time they claim it took to disarm the victim, our Supreme Court precedents suggest that the defense would not have been applicable for the subsequent hour-long standoff with Boys' School officials during which they retained possession of the knives. *See id.; State v. Castrillo,* 112 N.M. 766, 772, 819 P.2d 1324, 1330 (1991).

Moreover, trial counsel might have been unwise to pursue a duress defense regarding the conspiracy charge. Defendants denied any conspiracy under their theory of the case. Chavez said he went to the victim's bed to talk to him "man to man" and was forced to defend himself when the victim pulled a knife. Baca said he went to his friend's defense, and was attacked by the victim. Defendants argued that the victim initiated the incident. In light of Defendants' theory, it would have been inconsistent to argue that they decided to attack the victim because of the threats he had been making. *Cf. Harich v. Dugger,* 844 F.2d 1464, 1470 (11th Cir.1988) (en banc) (it was reasonable for defense counsel to pursue defense of factual innocence rather than defense of intoxication where defendant testified that he was only mildly drunk and did not commit the crimes), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1355, 103 L.Ed.2d 822 (1989). Trial counsel was entitled to take action intended to maintain credibility before the jury. The same consideration would justify defense counsel in not raising a duress defense to the charge of aggravated battery.

Counsel's choice of self-defense better fit Defendants' testimony than duress. Although there were elements of a duress defense, particularly the prior threats made by the victim, we will not second-guess counsel's strategy. Defendants have failed to establish a prima facie case of ineffective assistance of counsel entitling them to remand for an evidentiary hearing. *Swavola,* 114 N.M. at 475, 840 P.2d at 1241.

*CONCLUSION.*

For the foregoing reasons, Defendants' convictions are affirmed.

IT IS SO ORDERED.

BIVINS and HARTZ, JJ., concur.

854 P.2d 872

# SUPREME COURT OF NEW MEXICO

## Denials of Certiorari

| Title | Docket Number | Date of Denial |
|-------|---------------|----------------|
| Acosta v. State | 21283 | 6/17/93 |
| Affsprung v. State | 21264 | 6/14/93 |
| Alvarez v. State | 21292 | 6/24/93 |
| Baca v. State | 21198 | 5/20/93 |
| Baca v. State | 21290 | 6/24/93 |
| DeWaters v. State | 21274 | 6/17/93 |
| Gallegos v. State | 21249 | 6/14/93 |
| Garcia v. State | 21280 | 6/17/93 |
| Gutierrez v. State | 21273 | 6/17/93 |
| Hellums v. State ex rel., Human Services Dept. | 21253 | 6/14/93 |
| Johnson & Lanphere, P.C. v. New Mexico Stud, Inc. | 21250 | 6/17/93 |
| Lewis v. State | 21262 | 6/14/93 |
| Mann v. State | 21265 | 6/14/93 |
| Maurer v. Pool Well Servicing | 21275 | 6/17/93 |
| Newsome v. Human Services Department | 21327 | 6/24/93 |
| Nieto v. State | 21304 | 6/23/93 |
| Padilla v. G.E. Johnson Const. Co. | 21298 | 6/24/93 |
| Quintana v. State | 21303 | 6/24/93 |
| Rivera v. State | 21252 | 6/17/93 |
| Robertson v. State | 21297 | 6/23/93 |
| Salazar v. State | 21296 | 6/24/93 |
| Sanchez v. City of Albuquerque | 21248 | 6/14/93 |
| Sanchez v. Group I: Ramzel | 21266 | 6/14/93 |
| Valenzuela v. State | 21255 | 6/14/93 |
| Washington v. State | 21289 | 6/24/93 |

## Writ Granted

| Title | Docket Number | Date of Grant |
|-------|---------------|---------------|
| State v. Koonsman | 21134 | 5/19/93' |

## Writ Quashed

| Title | Docket Number | Date of Denial |
|-------|---------------|----------------|
| Aragon v. State | 208114 | 6/16/93 |