# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**PAUL RANDALL COOPER,**

Petitioner-Appellee,

v.                                                                    **NO. 30,224**

**JAMES JANECKA, Warden**,

Respondent-Appellant.


**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ernesto J. Romero, District Judge**

Gary K. King, Attorney General
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Brian A. Pori, INOCENTE, P.C.
Albuquerque, NM

for Appellee

## DECISION

**DANIELS, Justice.**

{1}     On August 10, 2005, Petitioner-Appellee Paul Cooper (Defendant) filed a petition for a writ of habeas corpus to set aside his 1992 convictions for murder,

robbery, aggravated battery, and attempted arson. Defendant based his petition primarily on a theory of ineffective assistance of counsel. After an evidentiary hearing where Defendant's habeas counsel presented evidence regarding the ineffectiveness of his trial counsel, the district court granted the petition. The district court determined that defense counsel's failure to investigate, prepare for trial, present expert witnesses, and request jury instructions was both deficient and prejudicial, but only as related to his claim of inability to form specific intent due to intoxication. A bifurcated appeal by the State resulted, in which this Court decided a jurisdictional issue first. Having resolved that issue favorably to the consideration of Defendant's claim, we now decide the merits of his petition.

{2} The State's argument on appeal is that defense counsel's representation was within the bounds of effective assistance of counsel. Defendant did not cross-appeal as to any of his unsuccessful theories, including his ineffective assistance of counsel issue related to a self-defense claim. Thus, the only question before the Court is whether the district court correctly found ineffective assistance of counsel based on defense counsel's failure, as to the intoxication defense only, to thoroughly investigate, prepare for trial, call expert witnesses, and request relevant jury instructions. The question is further limited to the specific intent crimes of felony

murder based on a predicate felony of armed robbery, aggravated battery, and attempt to commit arson. The district court included another count of aggravated battery in its order granting Defendant's petition, but this Court had already vacated that charge in 1998 on direct appeal, and it is no longer in issue. *State v. Cooper*, 1997-NMSC-058, 124 N.M. 277 P.2d 660.

## I.    BACKGROUND

{3}    During the evening of May 17, 1992, Defendant went to a gay bar called "The Ranch" and met Gary Marquez. After watching a sexual bondage film at the bar, the two went to Defendant's apartment to engage in similar conduct. At some point in the evening, Defendant killed Marquez in his apartment by striking him in the head with a pipe, stabbing him 22 times, and then hitting him with a dumbbell. Defendant was also injured, with two of the tendons in his fingers being severed.

{4}    Defendant then placed an open gasoline can near the body, turned on the gas on the stove to begin filling the apartment with flammable gas, and planted a homemade grenade in the bathroom, all in an elaborate scheme to burn the building when the water heater pilot light would ignite the gas. Defendant then immediately drove to California in Marquez's car. Once in California, Defendant checked into a hotel and called his sister and told her of the killing. After their conversation, his

sister informed California police that her brother had killed someone in Albuquerque and could be found in a local hotel. During a standoff with police, Defendant made various incriminating statements, eventually gave himself up, and was transported back to Albuquerque for prosecution. While in police custody, Defendant continued making incriminating statements regarding Marquez's death.

{5} Defendant offered various explanations of the killing throughout the course of the proceedings. Defendant told his sister there had been a fight at his apartment. Defendant also told his sister "that there was something wrong with his mind." Defendant told police in California that his apartment had burned down, before he learned that his arson device had not succeeded in burning the apartment. He further told the police, "He was supposed to knock out . . . . He wasn't supposed to fight back . . . . It wasn't supposed to go like that." He also stated, "I was just going to take his car." He also told police, "I'm crazy and I killed somebody okay" and claimed he "went to California to assassinate former presidents Nixon and Reagan." *Id*. ¶¶ 16, 19. California police found written on his voter registration card in his hotel room, "Kill Reagan, then myself." *Id*. ¶ 17. Later, he disputed the truth of his initial statements to the police, claiming he made them to "avoid disclosing his inability to perform sexually." *State v. Cooper*, 1997-NMSC-058 ¶ 19, 124 N.M. 277, 949 P.2d

660.

{6}     Faced with Defendant's varying versions of events, defense counsel made efforts to select the defense strategy most supported by the facts and one that the jury could rationally believe.  Defense counsel first attempted to establish a diminished capacity claim. Defense counsel consulted with three different psychological experts, all of whom believed Defendant could form the specific intent to kill and found no evidence of mental illness, other than a borderline personality disorder.  Their findings prompted defense counsel to abandon both the diminished capacity and intoxication defenses in favor of a self-defense claim.  Defense counsel proceeded to trial on the self-defense claim alone, a defense which was rejected by the jury.

## II.     DISCUSSION

{7}     "When this Court addresses the propriety of a lower court's grant or denial of a writ of habeas corpus based on ineffective assistance of counsel, findings of fact of the trial court concerning the habeas petition are reviewed to determine if substantial evidence supports the court's findings." *Duncan v. Kerby*, 115 N.M. 344, 347, 851 P.2d 466, 469 (1993).  "Questions of law or questions of mixed fact and law, however, including the assessment of effective assistance of counsel, are reviewed de novo." *Id*. at 347-48, 851 P.2d at 469-70.

5

**{8}** The State does not challenge any of the district court's findings of fact. Instead, the State centers its appeal on the district court's application of those facts to law. Thus, this Court must accept the facts as found by the district court and independently review the legal question whether defense counsel's representation deprived Defendant of his right to effective assistance of counsel.

**{9}** The United States and New Mexico Constitutions guarantee not only the right to counsel, but also the right to the effective assistance to counsel, which ensures a criminal defendant receives a fair trial by subjecting the prosecution's case to meaningful adversarial testing. *See State v. Young*, 2007-NMSC-058, ¶ 2, 143 N.M. 1, 172 P.3d 138.

**{10}** To prove counsel was ineffective, a defendant must show (1) deficiency on the part of counsel, and (2) that such deficiency resulted in prejudice. *State v. Gonzales*, 2007-NMSC-059, ¶ 13, 143 N.M. 25, 172 P.3d 162. When applying this test, the presumption is that counsel is competent. *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127. The ineffective assistance of counsel inquiry must be highly deferential to counsel's judgment, avoid the distorting effects of hindsight, and take into account all of the circumstances surrounding the defense. *Lytle v. Jordan*, 2001-NMSC-016, ¶ 26, 130 N.M. 198, 22 P.3d 666.

{11} "The sixth amendment right to counsel imposes a duty upon defendant's counsel . . . to fairly investigate and assert appropriate defenses." *State v. Lewis,* 104 N.M. 677, 681, 726 P.2d 354 (Ct. App. 1986). "New Mexico courts have found that counsel's performance was deficient where counsel failed to investigate a significant issue raised by the client . . . ." *State v. Hunter*, 2006-NMSC-043, ¶ 14, 140 N.M. 406, 143 P.3d 168. While failure to make adequate pretrial investigation and preparation may be grounds for finding ineffective assistance of counsel, *State v. Barnett*, 1998-NMCA-105, ¶ 30, 125 N.M. 739, 965 P.2d 323, "[d]efense counsel is not required to present a defense not warranted by demonstrable facts." *Lewis,* 104 N.M. at 681, 726 P.2d at 358. The duty to investigate is tempered by a reasonableness standard and the defendant must overcome the presumption that the challenged action is within the range of reasonable trial strategy. *State v. Paredez*, 2004-NMSC-036, ¶ 14, 136 N.M. 533, 101 P.3d 799. Thus, there is no ineffective assistance of counsel if counsel's actions are consistent with a legitimate trial tactic, because "we will not second guess the trial strategy and tactics of the defense counsel." *State v. Gonzales*, 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992).

{12} A decision not to investigate must be assessed for reasonableness in all the circumstances, applying heavy deference to counsel's judgments. *Lytle*, 2001-NMSC-

7

016, ¶ 40. Strategic choices made after thorough investigation are virtually unchallengeable, while strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments would support those limitations on investigation. *Id.* ¶ 41.

{13} Although the district court believed that defense counsel's investigation, pre-trial preparation, and performance at trial as to the intoxication defense was deficient, the record does not show any particular evidence that a more extensive investigation into the intoxication defense would in fact have discovered. One can only speculate as to what lay witnesses might have offered as to how much Defendant was drinking and how intoxicated he was acting. Although defense counsel might have found an alcohol expert such as Dr. Reyes, who testified at the evidentiary hearing for Defendant, to testify at trial about the effects of Defendant's alcohol intake, the expert's testimony would necessarily have to be based on available evidence of that intake. The evidence of that intake, both at trial and at the habeas hearing, consisted primarily of Defendant's own statements and actions. We must therefore examine the record to determine whether a competent attorney might reasonably have decided to forego the intoxication defense in light of the circumstances.

{14} The fact that defense counsel may have claimed or sincerely believed that his

8

own representation was ineffective is not controlling in our inquiry. Our case law has consistently stressed that an ineffective assistance claim is not established unless counsel's representation falls below an *objective* standard of reasonableness. *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289; *State v. Roybal*, 2002-NMSC-027, ¶ 21, 132 N.M. 657, 54 P.3d 61; *Lytle v. Jordan*, 2001-NMSC-016, ¶ 26, 130 N.M. 198, 22 P.3d 666. Thus, if a reasonably competent attorney could have made the same choices in the same situation, the subjective thinking process of trial counsel at the time of the original proceeding or any post-mortem self-criticism on trial counsel's part will not establish ineffective assistance. Accordingly, we turn now to the necessary objective analysis of the circumstances of this case.

{15} Defense counsel was informed by Defendant that throughout the day and evening leading to Marquez's death he had consumed around twelve to fifteen beers, used cocaine (although Defendant later denied this), and smoked a marijuana cigarette. Additionally, defense counsel knew that Marquez, who had been drinking with Defendant on the night of his death, had a blood alcohol level of .14 at the time of death. Although defense counsel testified at the evidentiary hearing for a writ of habeas corpus that he had no reason to believe Defendant's BAC was lower than Marquez's and personally believed that Defendant was so intoxicated that he could

9

not have formed the requisite intent, those lay opinions would not have been admissible before a jury.

{16} It is true that defense counsel did not seek lay witnesses from the bar nor an expert on alcohol metabolization. Instead, he relied on a determination by a forensic psychologist, who examined and talked to Defendant. Although not a specialist on the effects of alcohol, the expert concluded that Defendant's "level of intoxication was [not] acute enough to impair his thinking at the level [necessary] . . . to believe that he was incapable of thinking . . . ." The psychologist further concluded that "he's a fairly rational man and his description of his thoughts and behavior at the time that the incident began don't reflect that he was acutely intoxicated." Whether or not Defendant was accurate or inaccurate in the information he supplied to the expert, we cannot agree that defense counsel acted unreasonably in relying on the opinion of the forensic psychologist.

{17} The record also reflects even more substantial reasons than the examining psychologist's report for a competent attorney's decision not to pursue an intoxication defense.

{18} In preparing a defense, one of the most fundamental concerns for counsel is to make sure the defense will be considered credible by the jury. Not only is this

important with respect to the likely success of the particular theory of defense under consideration, it is important with respect to the likely success of any other theories of defense that may also be presented. Implausible or conflicting theories of defense can undermine the credibility of counsel and the viability of the entire defense case.

{19} The record before us exemplifies why a reasonably competent attorney could have felt it unwise to try to sell the jury an "I was so drunk I didn't know what I was doing" defense.

{20} Defendant made numerous incriminating statements to California and New Mexico police regarding his intentional actions and plans, including his plan to steal Marquez's car. These evidentiary admissions and circumstances are inconsistent with a contention that Defendant was too intoxicated to form the specific intent necessary to commit the offenses of which he was convicted.

{21} Much of the testimony and evidence aligned instead with a claim of self-defense, a theory that, unlike inability to form specific intent, is a much more viable defense to a homicide charge. Defendant had called his sister and told her he had killed someone during a fight. He recounted a similar story to the police. He did not tell anyone he was too drunk to know what had happened. The destruction found in the apartment and Defendant's injured hand were also consistent with self-defense.

11

Defendant's story that he and Marquez went back to his apartment for sexual activities and that Marquez attacked him when he could not perform sexually, directly supported a self-defense theory, rather than a defense that he was too drunk to act volitionally. Defendant's ability to craft an elaborate plan to ignite the building and destroy the crime scene evidence after the killing further undermined a claim that Defendant was too intoxicated to form intent. After setting up his arson mechanism, he then made a decision to take an automatic transmission automobile instead of one with a standard shift, calculating by his own admission that he reasoned it would be easier to drive with his injured hand. He then drove the automobile from New Mexico to California, coping with all the volitional acts and decisions involved in operating an automobile, in coping with other traffic, in responding to traffic signals, and in avoiding detection throughout all the time and distance of his post-killing journey. It would be difficult to imagine how any attorney could make a plausible argument to a jury that a person who had made all those decisions and taken all those actions was so drunk he was incapable of intending actions and consequences.

{22}     Not only would a reasonably competent attorney have to calculate the odds of success for the two competing defense theories, it would be irresponsible not to consider their potential consequences. A successful intoxication defense would have

12

resulted in a second-degree murder conviction, while a successful self-defense claim would have justified the homicide altogether and resulted in an acquittal.

**{23}** In *State v. Baca*, the Court of Appeals held that the defendant failed to make a prima facie case of ineffective assistance of counsel regarding defense counsel's choice to abandon a duress defense in favor of a self-defense claim. 115 N.M. 536, 544, 854 P.2d 363, 371 (Ct. App. 1993). The court stated, "[c]ounsel's choice of defenses will not be disturbed unless the choice appears wholly unreasoned or deprives the defendant of his only defense." *Id*. at 543, 854 P.2d at 370. Here, defense counsel's choice of self-defense rather than an intoxication defense, while not exhaustively investigated, cannot be said to have been wholly unreasonable in light of Defendant's statements and actions undermining an intoxication defense and a psychologist's opinion regarding problems with the defense.

**{24}** In *Gonzales*, this Court did not hold counsel's actions deficient when counsel chose to pursue an innocence claim, failed to tender self-defense instructions, and failed to locate a missing witness who could have testified as to the self-defense theory. 2007-NMSC-059, ¶ 13. The Court stated, "[t]he presumption of effective assistance will remain intact as long as there is a reasonable trial tactic explaining counsel's performance." *Id*. ¶ 14. The Court further reasoned, "had the jury been

13

instructed on imperfect self-defense, it would have been in direct conflict with the defense trial strategy of maintaining Defendant's innocence." *Id.* ¶ 15. In this case, tendering an intoxication defense, while not in irreconcilable conflict, would have created tension with a theory of self-defense, which requires some degree of cognizance and intent to protect oneself.

{25} In *State v. Talley*, the Court of Appeals held counsel's performance ineffective when the defense failed to tender a proper instruction on inability to form specific intent, failed to tender limiting instructions on the defendant's statement given during a mental examination, and failed to tender an instruction concerning the effect of intoxication on the ability to form specific intent. 103 N.M. 33, 36-38, 702 P.2d 353, 356-58 (Ct. App. 1985). The case involved a burglary, larceny, and arson where the defense's main theory of the case was that the defendant was an intoxicated pyromaniac who had shared five to seven pitchers throughout the day with one other person and could not have formed the requisite intent to commit arson. *Id.* at 35, 37-38, 702 P.2d at 355, 357-58. In contrast, although Defendant similarly claims to have consumed between twelve to fifteen beers throughout the day, Defendant had an alternative defense, whereas the defendant in *Talley* did not. Moreover, the specific intent defense as a result of both mental illness and intoxication was specifically

14

placed in issue throughout the case, although counsel did not follow through with the necessary jury instructions. Here, defense counsel chose not to attempt an intoxication defense, a decision which falls within the permissible range of competent defense strategy, especially since an intoxication defense and a self-defense claim are incongruent. In addition, unlike the record in *Talley,* this record contains evidence of Defendant's statements and actions that would have gravely undermined the viability of an intoxication defense.

**{26}** Although defense counsel could have been more exhaustive in exploring a possible intoxication claim, his decision not to pursue it at the point that he did is within the permissible range of effective representation counsel because only reasonable competence is required by the Sixth Amendment, not an ideal or errorless defense. *See State v. Orona*, 97 N.M. 232, 234, 638 P.2d 1077, 1079 (1982).

**{27}** Because Defendant fails to meet the constitutionally deficient performance prong of the ineffectiveness test, it is unnecessary to engage in extended analysis of the prejudice prong. However, we note briefly that, for many of the same reasons why a reasonably competent attorney would have considered the intoxication defense to be unlikely to succeed and unwise to present, Defendant has failed to show that he was prejudiced by counsel's failure to pursue such a defense under the facts and

15

circumstances of this case:

> With regard to the prejudice prong, generalized prejudice is insufficient. *Id.* ¶ 25. Instead, a defendant must demonstrate that counsel's errors were so serious, such a failure of the adversarial process, that such errors "undermine[] judicial confidence in the accuracy and reliability of the outcome." *Id.* A defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

*State v. Bernal*, 2006-NMSC-050, ¶ 32. In the face of the substantial evidence of Defendant's actions and statements reflecting an awareness of what he was doing and an ability to act volitionally, albeit with the poor judgment and impairment from alcohol or other substances that are present in so many criminal cases, it is unlikely that a jury could have doubted his ability to form the intent to commit the crimes in this case. This record therefore does not support either necessary prong of a successful ineffective assistance challenge to his convictions.

## III. CONCLUSION

{28} Defendant has failed to establish that his trial counsel's performance was constitutionally deficient or that he was prejudiced by trial counsel's decision not to pursue and present an intoxication defense. We therefore reverse the district court's finding of ineffective assistance of counsel and deny Defendant's petition for writ of habeas corpus.

{30}    **IT IS SO ORDERED.**

_____

**CHARLES W. DANIELS, Justice**

**WE CONCUR**:

_____

**EDWARD L. CHÁVEZ, Chief Justice**

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

17