This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40242**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**GAGE WORTHAM,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Donna J. Mowrer, District Court Judge**

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Office of Scott M. Davidson, Ph.D., Esq., LLC
Scott M. Davidson
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Defendant Gage Wortham appeals his conviction for aggravated battery with a deadly weapon, contrary to NMSA 1978, Section 30-3-5(C) (1969). At trial, Defendant claimed that he shot Jason Adams (Victim) in self-defense, after which the district court instructed the jury on the elements of self-defense. Defendant argues on appeal that (1) the district court unconstitutionally curtailed his due process right to present a defense by limiting the evidence, which would have showed that Defendant reasonably feared Victim based on his knowledge of Victim's acts of domestic violence against

Defendant's aunt; (2) Defendant's counsel provided ineffective assistance by failing to ask for clarification of the district court's ruling restricting the evidence of Victim's past acts of domestic violence, failing to object to that ruling, failing to call Defendant's aunt as a witness, and failing to question or cross-examine other witnesses about Victim's domestic violence; (3) the district court's restrictions on presenting evidence of Victim's past violence, combined with counsel's ineffective assistance, amount to reversible cumulative error. We affirm.

**BACKGROUND** 1

**{2}**     The charges of aggravated battery with a deadly weapon in this case arose out of an incident on May 17, 2019, which ended with Defendant shooting Victim in the back, causing severe bodily harm. On the day of the incident, Victim, who lived with Defendant's aunt (Brandi), was driving a truck borrowed from Defendant's grandfather (Grandfather) on Grandfather's property. The testimony varied as to whether Defendant, driving his own truck, waved Victim down or whether it was Victim who signaled for Defendant to stop. Victim, carrying a baseball bat, walked or ran toward Defendant's truck. Victim testified he could see a gun in Defendant's lap as he approached. Upon seeing the gun, Victim turned around and walked back to his truck, threw the baseball bat in the truck through an open window, and opened the truck's door. Meanwhile, Defendant had stepped out of his truck with his gun, and was standing approximately 23 feet from Victim. Defendant shot Victim in the back, in his right shoulder.

**{3}**     This case was tried twice. The first trial ended in a hung jury. In the first trial Defendant's cousin, Grandfather, and Brandi all offered detailed testimony about several acts of physical abuse of Brandi by Victim (punching, choking, and standing on top of her), which Defendant's Grandfather reported he had described to Defendant only days before the incident at issue in this case. Defendant agreed in his testimony that Grandfather had told him about the physical abuse of Brandi and had described a particularly violent incident in detail.

**{4}**     At the first trial, defense counsel argued that Defendant's knowledge of Victim's physical abuse of Brandi placed Defendant in fear that Victim was running back to his truck to get a weapon. During its closing, the State conceded that Victim had abused Brandi, but argued that Victim did not deserve to be shot in the back. The State also argued that there was no appearance of the immediate danger of death or great bodily harm required to support a claim of self-defense.

**{5}**     This appeal focuses solely on the second trial, ending in Defendant's conviction for aggravated battery with a deadly weapon. At a bench conference before the second trial, the district court stated, "During the last trial, I felt like you were way in the weeds talking about domestic violence that was not related to this case, . . . so I am going to caution you that I do not want to spend a lot of time talking about domestic violence." The district court further indicated that it would "instruct[] the parties to move along if I think you are getting into the weeds again," commenting that "it is not relevant . . . all of

---

1The facts relevant to this appeal are not in dispute.

the issues regarding domestic violence between [Brandi] and [Victim]. Unless you can demonstrate that [Defendant] witnessed it, I don't want any testimony like that."

{6}     The trial began immediately after the bench conference. In this trial, the State argued in its opening, in relevant part, that Defendant had shot Victim because he was angry about the way Victim was treating Brandi. Less than an hour into the trial, Victim who was the first witness for the State, began to testify that in the days leading up to the shooting, Defendant became angry with Victim because he had been told Victim had been abusing Brandi. Defense counsel objected, arguing that the court had ruled during the bench conference that the parties could not elicit testimony about Victim's acts of physical abuse of Brandi. The district court responded, "I never said could not, I said I did not want the parties to get in the weeds and make it the focal issue of the case. I did not think it was relevant last time."

{7}     The trial continued for the remainder of the day and through the morning of the following day until 10:00 a.m. Defense counsel did not cross-examine Victim about his abuse of Brandi, did not call Brandi as a witness, and did not question Defendant, who testified in his own defense, about his fear of Victim based on Victim's prior acts of physical abuse against Brandi. Counsel did elicit Defendant's testimony that his fear of Victim was based on Victim's alleged drug use, something not mentioned in the first trial. In closing, defense counsel again argued self-defense, emphasizing that Defendant was terrified when Victim approached him with a baseball bat, but did not focus on Victim's abuse of Brandi as the reason for Defendant's terror. The jury was instructed on self-defense. There is no challenge on appeal to the jury instruction. The jury rejected Defendant's claim that he acted in self-defense, finding Defendant guilty of aggravated battery with a deadly weapon.

## DISCUSSION

### I.     The Trial Court Did Not Curtail Defendant's Right to Present His Defense

{8}     Defendant argues first that his due process right to present a defense was violated by the trial court's ruling that he could not call witnesses or elicit testimony concerning Victim's acts of violence against Brandi and Defendant's knowledge of those acts. Defendant concedes that defense counsel never objected or asked for clarification of the claimed ruling and that this issue was not preserved for appeal. Defendant asks this Court to review for fundamental error.

{9}     The first step in our fundamental error analysis is to determine whether there was error by the district court. *See State v. Ocon*, 2021-NMCA-032, ¶¶ 7-8, 493 P.3d 448. Only if we find what would be reversible error if there had been adequate preservation do we consider whether that error goes to "(1) the foundation of a defendant's rights, (2) the foundation of the case, or (3) a right essential to the defense of an accused, which no court could or ought to permit him to waive." *State v. Prieto-Lozoya*, 2021-NMCA-019, ¶ 24, 488 P.3d 715 (internal quotation marks and citation omitted). Fundamental error exists if it would "shock the [court's] conscience" to allow the conviction to stand,

*State v. Barber*, 2004-NMSC-019, ¶ 14, 135 N.M. 621, 92 P.3d 633, either because of "the obvious innocence of the defendant," *id.* ¶ 16, or because "a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Id.* ¶ 17.

**{10}** In this case, we are not persuaded that the district court erred. Indeed, we do not understand the district court's comments as a ruling excluding evidence. Because we find no error by the district court, we do not reach the second prong of our fundamental error analysis.

**{11}** A defendant who is claiming self-defense is permitted to offer evidence of both a character trait of the victim and of specific instances of the victim's conduct if the victim's character and conduct are relevant to proving one of the essential elements of self-defense. *See State v. Baca*, 1993-NMCA-051, ¶ 18, 115 N.M. 536, 854 P.2d 363 (recognizing that one purpose of admitting evidence of a prior violent act is "to explain a defendant's fear and establish that it was reasonable"); *State v. Armendariz*, 2006-NMSC-036, ¶ 17, 140 N.M. 182, 141 P.3d 526, *overruled on other grounds by State v. Swick*, 2012-NMSC-018, ¶ 31, 279 P.3d 747 ("When a defendant is claiming self-defense, [their] apprehension of the victim is an essential element of [their] claim."). The district court, however, "retains the discretion to exclude specific instances of the victim's conduct if the evidence is substantially more confusing, cumulative, or prejudicial than probative." *State v. Baca*, 1992-NMSC-055, ¶ 5, 114 N.M. 668, 845 P.2d 762.

**{12}** Although Defendant's argues on appeal that the evidence concerning Victim's domestic violence is relevant and that the district court erred in excluding it, we do not need to reach the question of whether the district court could have reasonably excluded examples of Victim's conduct in physically abusing Brandi. Defendant has failed to persuade us that the district court did, in fact, exclude this evidence. Defendant's argument focuses primarily on the bench conference and the district court's statement to counsel during that conference that the court will not let counsel get "into the weeds," by focusing the trial on Victim's acts of domestic violence against Brandi. We do not understand those comments to exclude all evidence about Victim's physical abuse of Brandi. The district court plainly stated that counsel could offer this evidence, but that, at some point, the court would limit the testimony to avoid making it the focal point of the second trial. Defendant's argument misconstrues the district court's pretrial comments to impose an absolute prohibition on the introduction of this evidence: there was no such prohibition.

**{13}** To the extent the district court's pretrial comments were not understood by counsel, they were promptly clarified by the district court. An hour into a trial that continued all day and into the next day, during the direct examination of Victim who was the very first witness, the State elicited testimony from Victim about his abuse of Brandi and about Defendant's knowledge of that abuse, tying it to testimony about Defendant's recent anger toward Victim. Defense counsel immediately objected, arguing that the court had ruled during the bench conference that this testimony would not be admitted.

At that point, the district court clarified its ruling, stating that it had not excluded this evidence. The court explained, "I said I did not want the parties to get in the weeds and make it the focal issue of the case." This clarification was made before defense counsel had cross-examined a single witness or called any witnesses for the defense, and well before closing argument. From that point on, defense counsel understood that, if he wanted to, he could explore this evidence so long as it was not the focus of the trial.

**{14}** The record indicates that several other witnesses, including Defendant, testified that Victim had physically abused Brandi. The State did not object and the court did not interfere when defense counsel asked Defendant on direct examination why he was afraid of Victim. Defendant was free to testify about his knowledge of Victim's violence toward Brandi, but chose instead to testify about his belief Defendant was using drugs and to rely on that alleged drug use as the basis for his fear of Victim. The evidence necessary to argue Defendant's theory of self-defense based on Victim's domestic violence was thus not blocked or excluded by the district court.

**{15}** Because Defendant has failed to establish that any ruling of the district court prevented him from introducing evidence essential to his defense or from arguing that defense to the jury, we find no error. We therefore do not need to reach the second step of the fundamental error analysis.

## II. Defendant Has Not Made a Prima Facie Case of Ineffective Assistance of Counsel

**{16}** Defendant next argues that assuming the district court did not exclude the evidence of domestic violence, then defense counsel's failure to present and argue that evidence establishes a prima facie case of ineffective assistance of counsel, requiring this Court to remand to the district court for the taking of evidence. In reviewing a claim of ineffective assistance of counsel, we presume effective assistance of counsel "unless a defendant demonstrates both that counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice." *State v. Sanchez*, 1995-NMSC-053, ¶ 20, 120 N.M. 247, 901 P.2d 178 (internal quotation marks and citation omitted). We first examine the record at trial to determine whether it supports a prima facie case of ineffective assistance of counsel. If the record establishes a prima facie case, we will remand to the district court for evidentiary proceedings. *See State v. Swavola*, 1992-NMCA-089, ¶ 3, 114 N.M. 472, 840 P.2d 1238. A prima facie case of ineffective assistance of counsel requires the defendant to show on the record that "(1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134. We note that "[a] prima facie case is not made when a plausible, rational strategy or tactic can explain the conduct of defense counsel." *State v. Castro*, 2017-NMSC-027, ¶ 37, 402 P.3d 688 (internal quotation marks and citation omitted).

**{17}** Defendant lists five examples that he claims amount to ineffective assistance of counsel: (1) defense counsel's failure to object to or seek clarification of the district

court's comments during the bench conference; (2) defense counsel's failure to cross-examine Victim about specific instances of violent conduct toward Brandi; (3) defense counsel's failure to call Brandi to the stand to testify; (4) defense counsel's failure to elicit on direct examination a statement from Defendant that he feared Victim because of Victim's acts of domestic violence; and (5) defense counsel's overall failure to "vigorously advance a theory of self-defense."

**{18}** We focus on the second element of a prima facie case of ineffective assistance of counsel: whether there is "a plausible, rational strategy or tactic [that would] explain the conduct of defense counsel." *Swavola*, 1992-NMCA-089, ¶ 3. Defendant argues that the record conclusively shows that defense counsel's failure to object to or to seek clarification of the district court's alleged exclusion of crucial defense evidence patently was not a strategic or tactical decision. According to Defendant, there could be "no advantage to be gained by [Defendant] as a result of counsel's decision not to object (or seek clarification of) the judge's order." We do not agree.

**{19}** The record shows that, unlike the first trial, where the State argued that Victim's prior domestic violence against Brandi did not show that Defendant reasonably feared imminent bodily harm when he shot Victim in the back from 23 feet away, the State, in the second trial, argued that Victim's abuse of Brandi had angered Defendant and that it was this anger that motivated his shooting of Victim. It was the State in the second trial that elicited testimony about Victim's abuse of Brandi, emphasizing that Defendant learned of that abuse just days before he shot Victim. The State argued that, rather than being afraid of Victim, Defendant was so angry about Victim's abuse of Brandi that he wanted to attack him. Faced with this new prosecution strategy arguing Victim's abuse of Brandi as Defendant's motive for attacking Victim, defense counsel could reasonably have decided that having the district court exclude all of the testimony about Victim's violence toward Brandi, and how Defendant had just learned of it days before, would undercut the prosecution's ability to use that evidence to show that Defendant had a motive to attack Victim. Defense counsel might have believed that Defendant's self-defense claim was not particularly strong because Defendant had shot Victim in the back from 23 feet away, making it hard to show that Defendant feared imminent harm. Under these circumstances, turning to drug use by Victim to explain Defendant's fear of Victim is a reasonable defense strategy.

**{20}** Because we can conceive of a reasonable defense strategy that would explain the counsel's performance, we will not find a prima facie case of ineffective assistance of counsel. *See State v. Roybal*, 2002-NMSC-027, ¶ 21, 132 N.M. 657, 54 P.3d 61. When a prima facie case of ineffective assistance of counsel is not apparent from the record, "[o]ur Supreme Court has expressed a preference that ineffective assistance of counsel claims be adjudicated in habeas corpus proceedings, rather than on direct appeal." *State v. Cordova*, 2014-NMCA-081, ¶ 7, 331 P.3d 980. We note that Defendant may still pursue this claim through a habeas corpus proceeding should he believe a factual basis exists for such a claim.

### III.    There Was No Cumulative Error

**{21}** Finally, Defendant argues that the district court alleged error in restricting his defense and defense counsel's ineffective assistance together amount to cumulative error. "The doctrine of cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Woodward*, 1995-NMSC-074, ¶ 59, 129 N.M. 1, 908 P.2d 231 (internal quotation marks and citation omitted). It will not be applied if "the record as a whole demonstrates that the defendant received a fair trial." *State v. Stills*, 1998-NMSC-009, ¶ 51, 125 N.M. 66, 957 P.2d 51 (internal quotation marks and citation omitted). Having found no error, we conclude that there is no cumulative error. *See State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211 ("[A]s we find no error in the actions and decisions of the trial court, there is no cumulative error.").

**CONCLUSION**

**{22}** For the foregoing reasons, we affirm.

**{23}  IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**